**David Aaron TENENBAUM,**
**Plaintiff–Appellant,**

v.

**Louis CALDERA Defendant–Appellee.**

Nos. 00–2394, 01–1704.

United States Court of Appeals,
Sixth Circuit.

Aug. 29, 2002.

Before KENNEDY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

KENNEDY, Circuit Judge.

## I. Background

David Aaron Tenenbaum brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging that the Army targeted him for criminal investigation and revocation of his security clearance because he is an orthodox Jew. The district court dismissed his claim based on the nonjusticiability of security clearance decisions, and noncompliance with the 45–day statute of limitations for federal employees, 29 C.F.R. § 1614.105(a).

Tenenbaum has worked for the Army since 1984 as a mechanical engineer specializing in combat vehicle survivability. His responsibilities included working cooperatively on joint projects with foreign governments, particularly Israel. In 1992, the Army began covertly to investigate Tenenbaum for espionage on behalf of Israel. The investigation allegedly began after accusations from Tenenbaum's coworkers that he was a security risk because he was Jewish, spoke Hebrew, and worked with Israeli military officers. Tenenbaum also alleges that the Department of Defense had a policy of targeting American Jews as counterintelligence risks. Pursuant to this policy, Tenenbaum claims he was subject to a harassing debriefing regarding his official trips to Israel, was forced to take a polygraph examination, and had his security clearance suspended. In 1994 and 1996, the FBI formally investigated Tenenbaum, but found insufficient evidence to merit prosecution. Tenenbaum also alleges that based on his religion he was denied promotions, "monetary incentives," and training opportunities.

Federal employees must exhaust their administrative remedies by contacting an EEO officer within 45 days of the alleged discriminatory event. 29 C.F.R. § 1614.105(a)(1). Tenenbaum contacted an EEO officer on June 3, 1999. According to the evidence presented by the plaintiff, all of the allegations mentioned thus far occurred prior to the 45 day period that began on April 19, 1999.

Tenenbaum notes that he currently is physically isolated from his former coworkers; that he is viewed suspiciously by his fellow employees; and that he is not permitted to work on projects of significance to his career, particularly those involving Israel. He also alleges that on February 4, 2000, the Army revoked his security clearance despite the lack of evidence of wrongdoing. The thrust of Tenenbaum's argument is that these circumstances establish a continuing violations exception to Title VII's statute of limitations. We affirm the district court's decision that the continuing violations exception does not apply in this case.

## II. Analysis

### A. Justiciability of Executive Decisions Regarding Security Clearance

■ The merits of an executive branch decision to deny security clearance gener-

ally are not reviewable. *Dept. of the Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). *Egan* dealt with the narrow question of what statutory authority was vested in an executive agency to review the substance of a security clearance decision. Its separation of powers rationale establishes that, absent express congressional authorization, sensitive security clearance decisions should be free from interference by judicial officers with little expertise in the important and complex realm of national security.[1] Because Title VII would require a court to weigh the validity of the executive's proffered reasons for revoking a security clearance, judicial review would constitute precisely the sort of interference criticized in *Egan.* Four other circuits agree, holding that security clearance decisions are not justiciable under Title VII. *Ryan v. Reno,* 168 F.3d 520 (D.C.Cir.1999); *Becerra v. Dalton,* 94 F.3d 145 (4th Cir.1996), cert. denied, 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997); *Perez v. FBI,* 71 F.3d 513 (5th Cir.1995), cert. denied, 517 U.S. 1234, 116 S.Ct. 1877, 135 L.Ed.2d 173 (1996); *Brazil v. Dept. of the Navy,* 66 F.3d 193 (9th Cir.1995), cert. denied, 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996).

Executive decisions regarding security clearance are not completely immune from scrutiny. Judicial review may be appropriate, for example, where the plaintiff alleges a violation of constitutional rights. *See Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). Tenenbaum's invocation of this exception is puzzling since his amended complaint does not contain any constitutional claims.

Courts may also be permitted to hear cases in which an agency violates its own regulations in the process of revoking a security clearance. *See Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). Tenenbaum raises this issue for the first time in his opening brief on appeal. He presented no specific cause of action to the district court regarding the violation of any regulations. This issue, therefore, is not properly before this court. *See Taft Broadcasting Co. v. United States,* 929 F.2d 240, 243 (6th Cir.1991). Even if Tenenbaum's allegations of failure to comply with Army regulations were properly presented and meritorious, the remedy would be for the district court to order the agency to correct its procedural errors and not, as Tenenbaum suggests, to open the decision to a review on the merits. Tenenbaum urges the court to make an exception to the general rule of non-reviewability in the name of justice, but he does not articulate what injustice would result from forcing him to litigate these complex and fact-intensive regulatory issues via the proper channels, where a full record can be developed.

Given that the decision to revoke Tenenbaum's security clearance is not justiciable under Title VII, the decision cannot constitute an act of discrimination sufficient to bring Tenenbaum's claim within the 45 day time period.

### B. The Continuing Violations Doctrine

This circuit has previously identified two categories of continuing violations. The first arises where there is a series of continuous and sufficiently related discriminatory acts, and at least one of those acts occurred within the statutory period. *Haithcock v. Frank,* 958 F.2d 671 (6th Cir.1992); *Hull v. Cuyahoga Valley Joint*

---

1. Tenenbaum does not argue that Title VII contains any express authorization for judicial review of security clearance decisions.

*Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505 (6th Cir.1991). The second arises where there exists a longstanding and demonstrable policy of discrimination. *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394 (6th Cir.1999); *Dixon v. Anderson*, 928 F.2d 212 (6th Cir.1991), cert. denied, 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000).

The district court found that neither of these categories apply in this case.

### 1. Serial Violations

This category of continuing violations doctrine has been cabined by the Supreme Court's recent decision in *National Railroad Passenger Corp. v. Morgan*, —— U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The *Morgan* decision held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 122 S.Ct. at 2066. In so holding, the Court reversed the Ninth Circuit's application of its serial violations doctrine to Morgan's discrimination claim.[2] The Ninth Circuit's test is closely analogous to this Circuit's continuing violation doctrine.[3] Because the Court held that the Ninth Circuit's serial violations test was too permissive as applied to claims of individual discrimination, this Circuit's doctrine is

also implicated as applied to Tenenbaum's case.

However, this case does not require us to confront the issue of precisely how *Morgan* implicates our continuing violations doctrine, since it is clear that even under the old, more liberal standard, Tenenbaum has not established that a discriminatory act occurred in the limitations period. Tenenbaum would have to show some discriminatory act that occurred on or after April 19, 1999. As the district court noted, there is not any indication of a specific act on any particular date. Tenenbaum suggests that discrimination took place "each and every day of the limitations period" in that he was subject to discriminatory job assignments and work responsibilities, including precluding his access to classified information, limiting his contact with Israelis, physically isolating him from his former co-workers, and preventing him from participating in the projects on which his career was based. As a matter of law, such adverse conditions of employment *could* constitute identifiable acts of discrimination. *See, e.g., Held v. Gulf Oil Co.*, 684 F.2d 427 (6th Cir.1982). However, such acts could also be the present effects of past discrimination, which do not trigger a continuing violations exception.

---

**2.** The Supreme Court's decision affirmed the application of the serial violations doctrine to hostile work environment cases. *Morgan*, 122 S.Ct. at 2066 (noting that it is irrelevant "that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of assessing liability."). In a prior case, the Court affirmed the application of the serial violations doctrine to pattern or practice cases. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

**3.** To be more precise, the Ninth Circuit held that a plaintiff can establish a continuing violation either by showing "a series of related acts one or more of which are within the limitations period ... if the evidence indicates that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period," or by showing "a systematic policy or practice of discrimination that operated, in part, within the limitations period—a systemic violation." 232 F.3d 1008, 1015–16 (2000). This second category, like this circuit's "longstanding and demonstrable policy" category, is not implicated by the Court's decision in *Morgan*.

*Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir.1991).

The district court made the factual determination that the current conditions of Tenenbaum's employment are a consequence of the fact that he was accused—even if wrongfully—of espionage and had his security clearance revoked. In a supplementary letter submitted after oral argument, Tenenbaum notes that although he was reinstated at TACOM in March of 1998, his security clearance was not officially and finally revoked until February 4, 2000. He therefore asserts that the disparate treatment preceding February 2000 cannot be attributed to the lack of a security clearance. However, his clearance had been suspended during the course of the criminal investigation, and Tenenbaum has provided no evidence that it was restored prior to the government's official decision to revoke it in February 2000. In fact, the record contains a letter dated March 9, 1999, informing Tenenbaum of the Army's preliminary decision to revoke his security clearance. (J.A. Vol. I at 124).

■ Although the espionage investigation might have been motivated by invidious discrimination, Tenenbaum has not alleged facts sufficient to support an inference that all subsequent adverse employment acts were similarly motivated.[4] Indeed, Tenenbaum has alleged no specific facts at all regarding these acts. *See Burzynski v. Cohen,* 264 F.3d 611, 618 (6th Cir.2001) (finding no continuing violation where plaintiff's complaint does not allege the circumstances of the adverse actions and provides no evidence of discriminatory animus regarding those particular acts). We cannot reverse the district court's conclusion that, based on the facts in the record, Tenenbaum's current employment status, if based on discrimination, is the present effect of past discrimination.

### 2. Longstanding and Demonstrable Policy of Discrimination

The district court did not err in finding no longstanding and demonstrable policy of targeting American Jews as counterintelligence risks. In order to qualify under this category of continuing violations, "appellant must demonstrate something more than the existence of discriminatory treatment in his case." *Haithcock,* 958 F.2d at 679. "The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." *EEOC v. Penton Indus. Publishing Co.,* 851 F.2d 835, 838 (6th Cir.1988).

■ Tenenbaum claims that a Department of Defense newsletter, which accused Israel of pursuing American Jews for intelligence gathering activities, proves that the Army had an official policy of discrimination against American Jews. The district court properly found that the newsletter, standing alone, did not constitute an official policy. Tenenbaum presents no evidence of similar discrimination against other American Jews, nor does the record reveal any evidence of class-wide discrimination. On the contrary, the facts alleged in the complaint clearly show that the Army was, in the words of the district court, "targeted like a laser at Mr. Tenenbaum."

### C. Equitable Tolling

Tenenbaum's final argument is that if his complaint is untimely, it is only be-

---

4. Such an inference is permissible if the facts of the case support it. *See Alexander v. Local 496, Laborers' Int'l Union,* 177 F.3d 394, 409 (6th Cir.1999) (noting that the court may look to past discriminatory acts and practices in order to show motive and intent as to present acts and practices).

cause he was actively misled by the Army's subterfuge in hiding their discriminatory motives for the investigation. He therefore asks the court to apply the equitable tolling doctrine to excuse his untimeliness. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

This court reviews a district court's decision regarding equitable tolling for an abuse of discretion. *EEOC v. Kentucky State Police Dept.,* 80 F.3d 1086 (6th Cir. 1996). To "successfully raise a claim of equitable tolling, a party must show either fraudulent concealment of the critical facts that would lead one to know that he can sue, or a misrepresentation of those facts—whether made in good faith or not—that was calculated to induce a plaintiff to forego the right to sue." *Jones v. General Motors Corp.,* 939 F.2d 380, 385 (6th Cir.1991).

Tenenbaum claims that he did not know the full extent of the Army's discrimination against him because the Army intentionally concealed certain aspects of its investigation. This is not a reason to toll the statute of limitations. A plaintiff need not know all the facts of his case in order to comply with Title VII's administrative exhaustion requirement. At least as of October 1998, when he filed his original civil rights lawsuit, Tenenbaum knew enough critical facts to conclude he was the victim of religious discrimination. At that point, Tenenbaum chose to file a lawsuit rather than contact his EEO officer. There is no allegation that Tenenbaum was unaware of the procedural prerequisites to filing an employment discrimination claim against the federal government. There is no allegation that the Army actively misled him as to his rights and responsibilities regarding Title VII claims. The district court did not abuse its discretion in declining to apply equitable tolling in Tenenbaum's case.

Accordingly, we affirm the district court's decision to grant summary judgment to the government on Tenenbaum's Title VII cause of action.