NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0141n.06
Filed: December 1, 2004
NO. 03-4229

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

| | |
|---|---|
| HARVEY CARRASCO, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE SOUTHERN DISTRICT OF |
| NOAMTC INC., D/B/A North American Trailer | ) OHIO |
| Centers, | ) |
| | ) |
| Defendant-Appellee. | ) |

BEFORE:     KEITH, CLAY, and BRIGHT,* Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**  Plaintiff Harvey Carrasco ("Carrasco") appeals the

district court's grant of summary judgment for Defendant NOAMTC, Inc. ("NOAMTC"), his former

employer, on his claims of unlawful retaliation under 28 U.S. C. § 2000e ("Title VII") and the Ohio

Civil Rights Act, Ohio rev. code § 4112 ("OCRA"), and wrongful discharge under Ohio common

law.  The district court found that Carrasco's complaint did not properly plead claims of retaliation

for activities he engaged in that were protected under the Occupational Safety and Health Act of

1970, 29 U.S.C. §§651, or the National Labor Relations Act of 1935, 29 U.S.C. §§151.  We agree

---

*The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting
by designation.

and **AFFIRM** the district court's determination in that regard. We believe, however, that Carrasco

presented sufficient evidence to support a *prima facie* claim that his termination from NOAMTC

was in violation of Title VII and the OCRA. Accordingly, we **REVERSE** the district court's grant

of summary judgment for the Defendant and **REMAND** the case for further proceedings on those

claims. Ohio common law does not recognize an action for wrongful discharge where a statutory

remedy exists. Because we find that such a remedy exists here, we **AFFIRM** the district court's

dismissal of Plaintiff's state law claims of wrongful discharge under Ohio common law.

## I.

We present the facts in the light most favorable to Carrasco, as required in our review of

grants of summary judgment. *Verizon North Inc. v. Strand*, 367 F.3d 577, 581 (6th Cir. 2004).

Carrasco began his employment as a mechanic with NOAMTC's predecessor in interest, Fruehauf

Trailer Services, Inc. ("Fruehauf"), in August 1969. He worked for the company as a mechanic for

nearly thirty years and received only one written warning during that time, for failure to complete

a job in a timely manner. Carrasco was also an active member of the International Association of

Machinists and Aerospace Workers, AFL-CIO, throughout his employment.

In April 1997, NOAMTC acquired certain assets of Fruehauf and retained Carrasco as a

mechanic. One year later, in April 1998, Carrasco received three written "performance reports" for

mistakenly fueling a forklift with the wrong type of fuel, for failing to wear proper eye protection,

and for giving a co-worker improper instructions on how to cut a retaining ring on a brake chamber.

Near this time, Carrasco's direct supervisor, Anthony Sagraves ("Sagraves"), attended a

management meeting, during which NOAMTC general manager Bill Waldron ("Waldron") and

NOAMTC service manager Bill Dyer instructed the management team to start writing reprimands for any work rule violation committed by the "older employees" who were likely to be "union activists" and "slow in their job performance." This directive troubled Sagraves, who testified in an affidavit that he did not believe that the older employees were slow and felt they did a "good job."

In December 1998, Carrasco filed complaints against NOAMTC with the Occupational Safety and Health Administration (OSHA) for such things as exposing employees to inhalation and fire/explosion hazards, requiring employees to use a forklift with a defective brake system and other machine safety hazards, inadequate training of employees in the safe operation of the forklift or the handling of hazardous materials, and failing to properly certify its record of occupational injuries and illnesses. These complaints resulted in three citations against NOAMTC, which cost NOAMTC $69,200.00 in penalty fines.

Shortly after these citations were issued, Waldron instructed management to "come down" on Carrasco because he "had cost the company a lot of money." At this same meeting, another individual from the corporate office told Sagraves that the union and the older employees had to go, but that their termination needed to be done "the right way" by writing reprimands and accumulating disciplinary points against the older employees. In his affidavit, Sagraves also states that after Waldron became the plant manager, he instructed Sagraves to start writing reprimands for Carrasco due to his low productivity even though Sagraves "observed no deficiencies in [Carrasco's] work performance."

On February 3, 1999, Carrasco filed his first charge of discrimination against NOAMTC with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging that he was denied vacation time due to his race and age. Both complaints were later dismissed due to lack of evidence. Just two days after the complaints were filed, NOAMTC issued a written warning to Carrasco for using a torch and only wearing safety glasses instead of the required goggles. Carrasco claims that the warning was faulty because workers were not required to wear goggles "to heat a piece of metal." Even so, Sagraves testified that "at [plant manager] Bill Waldron's direction and against [his] judgment" he was "forced" to reprimand Carrasco.

A few months later, on October 29, 1999, Carrasco accidentally started a small fire in the shop when he used a wielding torch to cut a steel plate over the top of a metal bin that contained flammable material. Carrasco claims that he was not aware that the bin contained flammable material, that it had been placed inside the container without his knowledge, and that it was "common practice" for "everybody" to cut metal on top of trash containers. Waldron subsequently issued Carrasco a second written warning.

Carrasco received a third and final written warning two days later, after he allegedly performed faulty work on a trailer for one of NOAMTC's clients. The customer reported that the axle weld was faulty and out of alignment, and that the air lines were improperly attached. Carrasco testified in his deposition that various things could have caused the mis-alignment other than his faulty welding. Steven Gartin, NOAMTC shop foreman at the time of the incident, inspected the trailer at issue before the customer used it and testified that he did not see any problems with the work performed by Carrasco. Gartin also claimed that while he was the shop foreman, "at least 5

or 6 jobs came back to the shop to be reworked, including about 3 or 4 realignments. The mechanics involved ... were never disciplined." Sagraves corroborated this assertion, stating under oath that there were "numerous occasions" when customers returned trailers to NOAMTC "due to faulty workmanship and no one ever lost their job" or disciplined as a result.

On November 19, 1999, Carrasco received a letter from Waldron, which informed him that because of the trailer incident, his employment with NOAMTC was terminated. Carrasco subsequently filed a second charge of discrimination and retaliation with the OCRC and the EEOC in May 2000. The OCRC issued a finding of "no probable cause" on February 18, 2001, and the EEOC issued a similar finding shortly thereafter. Carrasco subsequently filed suit in Ohio state court, alleging that his termination was in retaliation for "asserting rights guaranteed by both Federal and State statute," as well as the common law of Ohio. NOAMTC moved for the case to be removed to federal district court. NOAMTC then moved for summary judgment on all of Carrasco's claims.

The district court granted NOAMTC's motion for summary judgment and dismissed Carrasco's claims. In doing so, the district court concluded that Carrasco failed to establish a *prima facie* case of retaliation because he failed to offer evidence that established a causal connection between the protected activity and the adverse employment action. Upon examination of the parties' arguments and the record at hand, we disagree with this conclusion.

## II.

This case presents us with three issues: (1) whether Carrasco's complaint properly pled claims of retaliation for activities he engaged in that were protected under the Occupational Safety and Health Act of 1970, 29 U.S.C. §§651, or the National Labor Relations Act of 1935, 29 U.S.C.

§§151; (2) whether the district court erred in granting summary judgment against Carrasco's claims of retaliatory discharge under Title VII and the Ohio Civil Rights Act ("OCRA"); and (3) whether the district court erred in granting summary judgment against Carrasco's claim of wrongful discharge in violation of public policy under Ohio common law. We review each of these issues in turn.

## II.A.

The first issue before our court is whether Carrasco properly pleaded claims of retaliatory discharge as a result of his participation in union activities and for filing OSHA complaints against NOAMTC. Carrasco's complaint alleges: "Plaintiff's suspension and discharge [were] in retaliation for asserting rights guaranteed by both Federal and State statute."  While it specifically names the charges of discrimination against NOAMTC that Carrasco filed with the OCRC and the EEOC, it does not mention the OSHA filings or the union activities as other "rights" asserted that led to the alleged retaliation. NOAMTC argues that Carrasco had not included the allegations regarding OSHA and union activities in his complaint, and thus could not raise them at summary judgment.

This court reviews this issue de novo. *LRL Properties v. Portage Metro Housing Auth.,* 55 F.3d 1097, 1104 (6th Cir. 1995). We agree with the district court's decision not to consider the specific claims that Carrasco was retaliated against because he filed complaints with OSHA and was active in a union. But we also find that evidence about and relating to those activities should nevertheless be considered by the court when evaluating NOAMTC's defenses to Carrasco's retaliation claim under Title VII and the OCRA.

Rule 8(a) of the Federal Rules of Procedure provides that a pleading that sets forth an original claim of relief should contain "a short and plain statement of the claim showing that the pleader is entitled to relief ... ." Fed. R. Civ. P. 8(a)(2). Accordingly, this court has stated that a "Complaint need not set down in detail all the particularities of a plaintiff's complaint against a defendant ... [a]ll a complaint need do is afford the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976) (citations omitted). Moreover, the United States Supreme Court has interpreted Rule 8(a) to allow for simplified notice pleading, noting that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Swierkiewicz v. Dorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Ritchie v. United Mine Workers of Am.*, 410 F.2d 827, 832 (6th Cir. 1969) (finding that "federal pleadings are to be construed liberally in order to prevent errors in draftsmanship from barring justice to litigants"). Carrasco argues that his statement that he was retaliated against for "asserting rights guaranteed by both Federal and State statute" was intended to encompass both the EEOC and OCRC filings, as well as the OSHA complaints and his union activity. We find that this statement was not sufficient in placing NOAMTC on notice that Carrasco's retaliation claim was based on the OSHA filings and union activities, as well as the EEOC and OCRC filings that were explicitly mentioned in the Complaint.[1]

---

[1] There is evidence in NOAMTC's answer to Carrasco's complaint that NOAMTC read the complaint to encompass the OSHA filings and union activity. NOAMTC argues that Carrasco failed to satisfy administrative and procedural exhaustion requirements, implicitly referring to the pending

We do note, however, that evidence surrounding Carrasco's union involvement and OSHA filings is relevant in evaluating the legitimacy of the warnings that NOAMTC issued to Carrasco, and the general defenses that it may present for its decision to terminate him. The record includes affidavits that indicate NOAMTC's claimed reasons for issuing warnings to and subsequently terminating Carrasco could be pretext for an illegal motivation. As such, the court would indeed risk "barring justice" to Carrasco if it were to ignore such evidence, merely because he did not mention such activities in his complaint. *Ritchie*, 410 F.2d at 832.

## II.B.

We next review de novo the district court's grant of summary judgment against Carrasco's claims of retaliation under Title VII and the OCRA. *Neinast v. Bd. of Trs. of the Columbus Metro. Library,* 346 F.3d 585, 590 (6th Cir. 2003). The party moving for summary judgment–here, NOAMTC –has the burden of persuasion in establishing that there is no genuine issue of material fact before the court. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Likewise, we review all evidence and underlying facts in the light most favorable to the non-moving party, Carrasco, *Verizon North Inc.*, 367 F.3d at 581, and will find for the non-movant if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

action before the National Labor Relations Board. NOAMTC also asserts that Carrasco's claims exceed the scope of the allegations contained in the administrative charges he filed with the OCRC and the EEOC. These paragraphs do not explicitly mention the OSHA complaint or union activity, however, and are insufficient to show that NOAMTC had ample notice of these additional claims.

More specifically, a plaintiff can survive a motion for summary judgment against a claim of unlawful retaliation under Title VII and the OCRA by producing direct evidence of retaliation or establishing a *prima facie* case. The latter requires that the plaintiff produce evidence indicating

> (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987) (citations omitted).[2]

This court has stated that at the summary judgment stage, the burden of establishing a *prima facie* case in a retaliation action is "easily met." *Id.* We have further explained:

> [A]t the *prima facie* stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible.
>
> The amount of evidence in the *prima facie* context is not the same amount necessary to win a judgment. ... All that is required of plaintiff at the *prima facie* stage is to demonstrate that he has a case, that the evidence is on his side.

*EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1984).

Despite this minimal requirement, the district court ruled that the evidence Carrasco presented failed to establish that a causal relationship existed between his charges of discrimination and his termination. As such, according to the district court, Carrasco did not present a *prima facie* case of unlawful retaliation sufficient to withstand a motion for summary judgment.

---

[2] In analyzing retaliatory discharge claims brought under OCRA, Ohio courts rely on federal case law pertaining to Title VII. *See, e.g., Genaro v. Cent. Transport, Inc.*, 703 N.E.2d 782, 784 (Ohio 1999). Our analysis therefore applies to the claims brought under both statutes.

This court recently stated that in establishing a causal connection in presenting a *prima facie* case under Title VII, "evidence ... that adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000). The specific issue of temporal proximity was addressed in *Harrison v. Metropolitan Gov't. of Nashville*, 80 F.3d 1107 (6th Cir. 1996). There, we held that even though one year and three months had elapsed between the filing of the EEOC charge and the plaintiff's termination, that time lapse, when considered in conjunction with the evidence that three other employees who testified on the plaintiff's behalf feared retaliation and the supervisor had made repeated comments that he would not hesitate to run employees out of his department for filing EEOC claims, was sufficient to establish a *prima facie* case of retaliation. *See id.* at 1119; *see also Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999) (holding that the close proximity in time between the adverse action and the protected activity coupled with the evidence of frequent discipline for trivial matters and unwarranted criticism of the plaintiff's work, when viewed as a whole, supported the jury's finding of retaliation).

The district court found that the timing of Carrasco's termination was so remote from the timing of the EEOC/OCRC filing that it was impossible to draw an inference of retaliation. The facts of the record do not support this determination. For example, Carrasco's record shows that he was reprimanded with a written warning for not wearing goggles on February 5, 1999, just two days

after he filed a complaint with the OCRC and the EEOC on February 3, 1999.[3] The warnings escalated from that point onward.

Furthermore, the district court also erred in finding that Carrasco did not present any additional evidence, apart from the temporal proximity of the filings and the warnings, to support an inference of retaliation. In his deposition, Carrasco noted that the activities for which he was reprimanded were actions that "everyone" did, but alleged that NOAMTC singled him out for punishment. This is corroborated by the testimony of NOAMTC supervisors Sagraves and Gartin. The district court, however, noted that it chose not to consider the affidavits of those two individuals because it was not directly related to the EEOC or OCRC filing but instead solely pertained to alleged retaliation for Carrasco's union activity and filing of OSHA complaints.

While it is true that the bulk of the testimony provided by Sagraves and Gartin related to NOAMTC's reaction to Carrasco's union activity and his filing of complaints with OSHA, both affidavits also provide strong evidence of a potential causal connection between Carrasco's EEOC and OCRA claims and NOAMTC's decision to terminate him. The affidavit submitted by Sagraves, former shop foreman at NOAMTC, for example, stated that a NOAMTC executive "discussed reprimanding Harvey Carrasco for causing the OSHA filing and filing other complaints with the EEOC and he specifically said, '[i]f we don't take care of the problem now we are going to pay for it later.'" In addition, remarks in both affidavits pertain to the trailer incident that allegedly led to

---

[3]The reprimand also followed just days after NOAMTC received citations from OSHA as a result of Carrasco's filings with the agency.

Carrasco's termination, and Sagraves testified that Carrasco was unfairly singled out for discipline apart from his peers during the trailer incident.

Viewing this evidence in the light most favorable to the Plaintiff, we find that Carrasco has presented sufficient evidence to demonstrate a *prima facie* case for retaliatory discharge under Title VII and the OCRA. Such a demonstration, however, is insufficient to survive a motion for summary judgment on this issue. Where the defendant articulates a "legitimate, nondiscriminatory reason" for plaintiff's termination, the burden shifts again to the plaintiff to demonstrate under a preponderance of evidence that the defendant's reason is pretextual. *Virts v. Consol. Frieghtways Corp. Of Delaware,* 285 F.3d 508, 521 (6th Cir. 2002) (citations omitted). The plaintiff must then establish that the defendant's reason (1) had no basis in fact; (2) was insufficient to explain the termination; and (3) that the actual reason was based in discrimination. *Id.* (citations omitted).

We find that NOAMTC does provide a "legitimate, nondiscriminatory reason" for terminating Carrasco, as evidenced in his numerous alleged safety violations and faulty workmanship. We also find, however, that based on the facts before the court, Carrasco has presented a persuasive and credible case to support the inference that NOAMTC's reason is pretextual. The facts we discuss in Section I, *supra,* indicate that, among other things, NOAMTC management instructed Sagraves that union and older workers like Carrasco "had to go." Testimony also indicates that Carrasco's supervisor was encouraged to "come down on" him after he filed the OSHA complaints and that other workers committed similar alleged infractions and did not receive

comparable, if any, punishment.[4] This and other evidence in the record imply that there is a genuine issue of material fact as to whether NOAMTC's stated reasons for firing Carrasco were pretextual. We thus conclude that the district court erred in granting summary judgment to NOAMTC and, accordingly, remand Carrasco's claims of retaliation under Title VII and the OCRA.

## II.C.

We lastly review whether the district court was correct in granting summary judgment against Carrasco's claim of wrongful discharge in violation of public policy under Ohio common law. Our review of Ohio law indicates that such a claim requires a showing that (1) a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law"; (2) in general, "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy"; (3) the "plaintiff's dismissal was motivated by conduct related to the public policy"; and (4) the employer did not have a justifiable "legitimate business justification for the dismissal." *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529-30 (Ohio 2002) (citations omitted). Further, the Ohio Supreme Court found that to prove the second prong of the above inquiry the plaintiff must show that there is no other recourse or remedy available:

> An analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful discharge claim. ...Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the

---

[4]As we explained above, we agree that Carrasco did not adequately plead retaliation claims based on his OSHA filings and union involvement. This does not, however, preclude the court from considering evidence pertaining to these activities in evaluating the motivation behind NOAMTC's decision to terminate Carrasco.

> substantive right and remedies for its breach, "the issue of adequacy of remedies" becomes a particularly important component of the jeopardy analysis. ... Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

*Id.* at 531.

Because Carrasco has a remedy available to him under both Title VII and the OCRA, we find that he cannot have that same claim under Ohio common law. We therefore affirm the district court's grant of summary judgment against Carrasco on this issue.

## III.

This case involves the protection of an employee's right to assert claims against his employer without fear of retaliation. It is thus of utmost importance that this court carefully consider the totality of the facts in the record when evaluating claims of retaliation. We find that the district court failed to do this. Though we **AFFIRM** the district court's finding that Carrasco's complaint did not properly plead claims of retaliation for OSHA and union-related activities, we nevertheless **REVERSE** the district court's determination that the Plaintiff failed to establish a *prima facie* case for retaliation under Title VII and the OCRA and remand these issues for further proceedings. For the reasons stated above, however, we **AFFIRM** the district court's dismissal of Plaintiff's state law claim under Ohio common law.