NOT RECOMMENDED FOR PUBLICATION
File Name:  20a0552n.06

No. 19-5489

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANTHONY A. KUKLINSKI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| STEVEN TERNER MNUCHIN, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | OPINION |

BEFORE:    SUHRHEINRICH, STRANCH, and NALBANDIAN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  This Title VII unlawful retaliation case arises within the law enforcement department of the United States Mint at Fort Knox.  Police Inspector Anthony Kuklinski alleges that he was investigated and removed from his position because he attempted to stop long-term harassment of a female employee by a male employee.  Defendant (as named and including references to the Mint) justifies the employment actions taken based on evidence supporting both Kuklinski's failure to comply with his tax obligations and his aggressive management activities that caused low employee morale.  Because Kuklinski fails to show that the Defendant's actions were pretextual, we **AFFIRM** the district court's grant of summary judgment against Kuklinski on his unlawful retaliation claim.

## I.    BACKGROUND

The facts are presented in the light most favorable to Kuklinski.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.    Factual Background

From 2004 until 2011, Kuklinski worked as a supervisory police inspector with the U.S. Mint Police[1] at the U.S. Bullion Depository in Fort Knox, Kentucky.  Throughout that time, one of Kuklinski's subordinates repeatedly harassed another one of his subordinates—hereinafter referred to as "Harasser" and "Officer," respectively.[2]  Harasser, a male, ultimately utilized the Depository's surveillance equipment to spy on Officer, a female, which Officer discovered and reported to her superior, Lieutenant Lee Booth.  Booth confirmed Harasser's misconduct, but declined to discipline him, and told Officer to report any future incidents of harassment.  His improper actions nevertheless continued, and Officer then reported them to Kuklinski on May 10, 2009.

The Depository's legal counsel, Irwin Ansher, opened an investigation into Officer's claims.  Inspector John Seiple conducted the investigation; Kuklinski reviewed Seiple's findings and recommended to human resources, the Depository's attorneys, and other officials that Harasser be removed.  Management decided instead to either reprimand or suspend Harasser, but Kuklinski insisted that removal was the only appropriate discipline.

On March 16, 2010, Trent Keltner, president of the Officers' union, informed Chief of U.S. Mint Police, Dennis O'Connor, and the Depository's Field Chief, Bert Barnes, that he believed Kuklinski had an inappropriate personal relationship with Officer and was biased against Harasser.  At that meeting, Keltner, O'Connor, and Barnes agreed that Barnes would serve as disciplinary officer.  On April 22, Harasser filed a rebuttal to Kuklinski's proposed discipline, claiming that

---

[1] The Mint Police serve as the law enforcement arm of the U.S. Mint—an agency within the Department of the Treasury.

[2] The parties, the district court, and the record refer to these subordinates as "Harassing Officer" and "Harassed Officer."  For conciseness and clarity, we refer to "Harassing Officer" as "Harasser" and the "Harassed Officer" as "Female Officer" or "Officer."

Officer perjured herself, that management conducted an unauthorized investigation against him, that the Depository was a hostile work environment, and that Officer and Kuklinski had an improper relationship. Management ultimately removed Kuklinski as disciplinary officer, but it is unclear if management notified him of that decision.

Deputy Chief Bill Bailey ultimately issued Harasser a letter of reprimand on May 26, 2010. But the harassment continued; Kuklinski advised Officer to file a claim with the Equal Employment Office (EEO), which she did. Kuklinski submitted a declaration to the EEO in support of Officer's claims.

During the pendency of Female Officer's claims before the EEO, the Depository contracted Carol Nichols, an independent investigator, to conduct investigations: one focused on Officer's allegations and Harasser's rebuttal, including whether Officer and Kuklinski had an inappropriate relationship, and another focused on possible management misconduct. Nichol's investigation revealed that no inappropriate relationship existed between Kuklinski and Officer, but that management misbehavior—including misconduct by Kuklinski—was pervasive at the Depository.

Prior to these two investigations, Kuklinski's superiors had addressed problems with his management style. In May 2009, Commander Paul Constable went to the Depository to conduct interviews to assess morale, and reported that there were morale problems to which Kuklinski contributed. On June 26, 2009, Field Chief Barnes issued a counseling memorandum to Kuklinski describing his poor management style and demanding corrective action. Nichol's investigation substantiated claims that Kuklinski's aggressive management style contributed to the poor morale and performance of his subordinates. These findings led Field Chief Connie Stringer—who replaced Barnes during the investigation—to tell Kuklinski he would be relieved of his supervisory duties pending further investigation. On January 31, 2011, Stringer sent Kuklinski a letter of

reprimand for lying to management and having "dropped the ball" in completing some of his duties. While the record is unclear whether Stringer actually suspended Kuklinski's supervisory duties, Kuklinski resumed performing such duties one month later, on February 25, 2011.

During this time, the Office of Personnel Management (OPM) required Kuklinski to fill out a routine five-year security clearance questionnaire to maintain his clearance and continue working at the Depository. OPM flagged that Kuklinski failed to file his federal and state income tax returns for 2008 and 2009, and potentially failed to disclose outside employment activities. The Department of the Treasury, Office of the Inspector General (OIG) initiated an investigation on April 1, 2011. Due to the pending OIG investigation, on April 5, the Mint suspended Kuklinski's police authority and assigned him to work in the maintenance building, where no security clearance was required. As a result, Kuklinski could no longer enter the building he normally worked in. On May 17, the OIG completed its investigation, which substantiated the allegations concerning Kuklinski's tax returns and outside employment. In November 2011, Lester Leach, Division Director of the Mint Police, issued a letter suspending Kuklinski's clearance.

On March 1, 2012, the Depository informed Kuklinski that OPM reinstated his security clearance but that, because of his aggressive management style, he was not allowed to enter the main security building without Field Chief Stringer's permission. That same day, the Depository told Kuklinski that he was being reassigned to the Investigations and Intelligence Branch at the Mint Headquarters in Washington, D.C. based on his "history of intimidating and aggressive behavior towards his subordinates."

Kuklinski contacted an EEO counselor on March 21, 2012, and filed an EEO charge against the Mint, claiming that it was retaliating against him for his involvement in Officer's harassment

claim. The parties began with mediation, during which Kuklinski's counsel produced photographs of the maintenance building to show that he was being subjected to a demeaning work environment that entitled him to damages. But federal regulations prohibit photography at the Depository; Field Chief Stringer drafted a report documenting the breach of regulations and opened an investigation into the photographs.

Legal counsel Ansher also requested and received Kuklinski's medical records and submitted them to medical expert Dr. Neil Presant to assess Kuklinski's claim of physical and emotional hardship and to conduct a fitness-for-duty examination. Dr. Presant concluded that Kuklinski was not physically and mentally fit to work as a police officer. Ansher submitted that report to Bailey and Stringer, despite Kuklinski's counsel's insistence on confidentiality, and Stringer asked Kuklinski to complete a workplace fitness-for-duty examination.

### B. Procedural History

On September 27, 2013, Kuklinski sued the Department of the Treasury and Secretary Mnuchin, claiming unlawful retaliation and constructive discharge under Title VII of the Civil Rights Act of 1964, 424 U.S.C. § 2000e-3(a). Defendant moved twice for dismissal of claims related to Kuklinski's security clearance based on *Department of the Navy v. Egan*, 484 U.S. 518, 529 (1988), which the district court granted. And on November 18, 2014, the district court dismissed the Department of the Treasury as a defendant, recognizing that "[t]he only proper defendant in a civil action brought under Title VII by a federal employee is 'the head of the department, agency, or unit' in which the allegedly discriminatory acts took place." (R. 27, PageID 233 (quoting 42 U.S.C. § 2000e-16(c)) (citing *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1053 n.1 (D.C. Cir. 1988); *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985)))

On November 30, 2017, Defendant moved for summary judgment on Kuklinski's remaining claims. The district court granted the motion on March 5, 2019, analyzing each potential

adverse action. It held Kuklinski failed to establish that Defendant's proffered reasons for taking each of the following actions were merely pretextual: (1) Kuklinski's removal as disciplining officer; (2) Nichols' first investigation; (3) Nichols' second investigation; and (4) the administrative investigation of Kuklinski's unlawful photographs of the Depository. *See Kuklinski v. Mnuchin*, No. 3:14-cv-00843, 2019 WL 1040975, at *7–8, 10 (W.D. Ky. Mar. 5, 2019). The court also determined that Kuklinski had failed to make a *prima facie* case of retaliation because he could not show a causal connection between his protected activity and Defendant's decisions to: (1) remove Kuklinski from his supervisory duties; (2) reassign him to Washington, D.C.; and (3) order him to undergo a medical examination. *Id.* at *9–10. Based on *Egan*, the court refused to evaluate evidence related to Defendant's decision to assign Kuklinski to the maintenance building because that decision concerned the investigation and suspension of Kuklinski's security clearance. *Id.* at *9.

Kuklinski timely appeals the district court's grant of summary judgment to Defendant on his unlawful retaliation claim.

## II.   ANALYSIS

### A.   Standard of Review

We review the district court's grant of summary judgment *de novo*. *See Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012). Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

As movant, Defendant "bear[s] the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Kuklinski's retaliation claim." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). Once Defendant has met his burden, Kuklinski, as the nonmoving party, must point to the record and show specific facts that reveal a genuine issue for trial. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). We must accept Kuklinski's evidence as true and draw all reasonable inferences in his favor. *See Anderson*, 477 U.S. at 255.

## B. Title VII Retaliation

Title VII retaliation claims can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 538 (6th Cir. 2008). Because Kuklinski relies on circumstantial evidence, we analyze his retaliation claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Imwalle*, 515 F.3d at 544. If Kuklinski satisfies the initial burden to establish a *prima facie* case of retaliation, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, non-discriminatory reason' for its actions." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (quoting *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 792–93 (6th Cir. 2000)). If satisfied, then the burden shifts back to Kuklinski to demonstrate that Defendant's "proffered reason[s were] not the true reason[s] for the employment decision." *Laster*, 746 F.3d at 730. Ultimately, Kuklinski bears the burden of persuasion throughout this process. *Dixon*, 481 F.3d at 333.

Under Title VII, Kuklinski must meet four requirements to establish a *prima facie* claim of retaliation: (1) he engaged in a protected activity; (2) "his exercise of such a protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster*, 746 F.3d at 730 (quoting *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)).

Kuklinski argues that the district court erred in considering each alleged adverse action in isolation and that it, instead, should have considered the "mosaic of retaliation evidence." Even considered in isolation, he argues that the court failed to consider his proffered evidence. And finally, Kuklinski contends that the court erred in its application of *Egan* by barring consideration of evidence related to the security clearance process. The first two arguments will be addressed in the analysis of Kuklinski's claim for Title VII retaliation under the *McDonnell Douglas* framework. The third will be discussed separately.

The first two parts of the *prima facie* case are undisputed on appeal; Kuklinski filed an EEO complaint alleging retaliation, and Defendant concedes that it knew about the complaint. The parties dispute the third and fourth requirements: whether the actions Defendant took were sufficiently adverse, and whether there exists a causal connection between the protected activity and the adverse action. On this record, we will assume that Kuklinski meets his minimal burden of establishing a *prima facie* case of retaliation. Defendant asserts the following as legitimate, nondiscriminatory motives for its actions: (1) Kuklinski's failure to file returns and timely pay federal and state taxes for two years; (2) "his bullying management style"; and (3) his contribution to and failure to improve low morale at the Depository, and his failure to adhere to the rules and regulations. These reasons are adequate to shift the burden to Kuklinski to demonstrate that

Defendant's reasons are pretextual. *See Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 521 (6th Cir. 2002). While he may do so however he chooses, Title VII plaintiffs typically establish pretext by showing that the Defendant's proffered reasons (1) have no basis in fact; (2) were not the actual reasons for the retaliatory acts; or (3) are insufficient to explain Defendant's actions. *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). Kuklinski "must produce sufficient evidence from which the jury could 'reasonably reject [Defendant's] explanation and infer that [Defendant] . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001)).

The district court, analyzing each potential retaliatory action in isolation, concluded that Kuklinski failed to demonstrate that Defendant's reasons for its actions were pretextual. Kuklinski argues that by viewing each action in isolation, the court failed to consider whether all of Defendant's actions, taken cumulatively, support a finding of pretext. *See Carassco v. NOAMTC Inc.*, 124 F. App'x 297, 305 (6th Cir. 2004) (emphasizing that the court must "carefully consider the totality of the facts in the record when evaluating claims of retaliation"). Title VII plaintiffs have flexibility in how they structure their pretext argument, including that the totality of the employer's actions demonstrate pretext. *See Miles*, 946 F.3d at 888. But even in reviewing the totality of the Mint's actions, Kuklinski "must articulate some cognizable explanation of how the evidence []he has put forth establishes pretext." *Id.* He fails to do so here.

Kuklinski sets forth numerous facts but it is unclear how those facts support a finding of pretext. For example, Kuklinski states that Defendant attempted to thwart Harasser's discipline and to get him to back down from his proposal to remove Harasser. Kuklinski then explains that

Defendant's administrative investigation into his relationship with Officer was ultimately fruitless. He contends that "[a] jury might conclude this investigation was undertaken to accomplish the inevitable: creation of an adverse report to undercut both Insp. Kuklinski and the female officer." But the record shows that the investigation occurred in response to Harasser's rebuttal to Kuklinski's proposal, which included accusing Kuklinski of improper management and of having an inappropriate relationship with Officer. Union president Trent Keltner also informed Mint Police Chief O'Connor and Field Chief Barnes that he believed Kuklinski had an inappropriate personal relationship with Officer and was biased against Harasser. Kuklinski argues that because the allegations that prompted the investigation proved false, he has demonstrated pretext. Though the investigation revealed that the relationship was not inappropriate, it did reveal significant evidence of improper management, as is discussed below. Kuklinski also failed to offer evidence or argument that the multiple reasons for initiating the investigations had no basis in fact or were insufficient to justify undertaking the investigations. Defendant's explanation that he undertook those investigations based on a list of allegations by Kuklinski's coworkers is not called into question merely because one of the allegations was not substantiated.

Kuklinski also asserts that he was removed as disciplinary officer to thwart his discipline of Harasser. He points out that Barnes provided two separate reasons for removing him: first that he was unavailable due to a leave of absence to help his mother, but in a later affidavit claiming that the removal was due to concerns about Kuklinski's objectivity as disciplinary officer. Kuklinski also argues that the Depository's counsel Ansher improperly involved himself in the matter, which he claims should have been handled by human resources. Kuklinski does not explain how these facts, or conjectures, demonstrate pretext nor does he provide caselaw supporting that conclusion. Defendant, moreover, contends that he removed Kuklinski as disciplinary officer

based on a potential conflict of interest and, in response, Kuklinski fails to provide evidence to demonstrate that this reason is false.

While Defendant ultimately did not find a relational conflict of interest, its investigation showed that Kuklinski's aggressive management style contributed to low morale at the Depository. Nichol's report contained 25 affidavits from Depository employees who complained of Kuklinski's management style. Barnes had counseled Kuklinski because his "threatening actions have unnecessarily increased the workplace tension at the [Depository] which has resulted in lowering the morale and negatively affecting the organization's members." Commander Constable found in August 2010, that many employees at the Depository reported poor morale that resulted from Kuklinski's management style. Constable also provided a list of leadership recommendations to Kuklinski in an effort to help him address and improve his problematic management style.

Kuklinski responds that other employees said they never witnessed him being aggressive or having a threatening management style, and that he never received or was shown the results of that investigation nor was he disciplined. He argues that Defendant's attempt to relocate him was "subjective," and that "morale was a notorious problem at the Mint, not attributable in fairness to him." That a few employees say they did not witness the problems, however, does not rise to the level of a dispute of material fact in light of the extensive record presented by Defendant showing that Kuklinski's management caused or contributed to low morale at the Depository. Kuklinski offers no evidence that those accounts were false. *See Miles*, 946 F.3d at 890 ("To establish pretext by contesting the factual bases for [an employer's adverse actions the employee] must show that the facts underlying her employer's allegations never occurred."). As for Kuklinski's claim that he finds Defendant's motives to be "subjective," we have stated that "mere personal beliefs,

conjecture, and speculation" alone are insufficient evidentiary support to show discriminatory motivation. *See Siegner v. Twp of Salem*, 654 F. App'x 223, 230 (6th Cir. 2016) (internal brackets omitted) (quoting *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006)).

Considering the totality of circumstances, Kuklinski fails to demonstrate that the Defendant's proffered reasons and marshalled evidence in support were not based in fact, were not the actual reasons, or were insufficient to justify the actions it took. Nor does he in any other way call into question Defendant's proffered rationales for taking adverse actions against him. Kuklinski does not meet his burden to establish pretext; the district court appropriately granted summary judgment.

### C. Application of *Egan*

As a separate matter, Kuklinski contends that we should consider evidence related to his pending security clearance investigation, namely his relocation to the maintenance building and Defendant's conduct leading to that decision. We generally cannot review the merits of an executive branch decision to deny a security clearance. *See generally Egan*, 484 U.S. 518 (1988); *see also Hale v. Johnson*, 845 F.3d 224, 230 (6th Cir. 2016) (emphasizing that the Court in *Egan* "explicitly narrowed its holding to address the review of decisions to revoke or deny security clearances"). We have recognized certain exceptions: Judicial review may be appropriate "where the plaintiff alleges a violation of constitutional rights," or where "an agency violates its own regulations in the process of revoking a security clearance." *Tenenbaum v. Caldera*, 45 F. App'x 416, 418 (6th Cir. 2002) (citing *Webster v. Doe*, 486 U.S. 592 (1988), and *Service v. Dulles*, 354 U.S. 363 (1957)). We have also declined to extend *Egan* to "determination[s] of an individual's physical capability to perform a job[, which] is based on hard science and has historically been reviewed by courts and administrative agencies." *Hale*, 845 F.3d at 231. "[P]ut simply, nothing in *Egan* suggests that its holding applies to physical-fitness judgments, even if purportedly based

on the interest of national security." *Id.* at 230; *see also Rattigan v. Holder*, 689 F.3d 764, 768 (D.C. Cir. 2012) ("[W]e adhere to our holding that *Egan*'s absolute bar on judicial review covers only security clearance-related decisions made by trained Security Division personnel . . . .").

Kuklinski takes issue with Defendant relocating him to the maintenance building while his security clearance investigation was pending. After the OIG completed its investigation and substantiated the allegations concerning Kuklinski's failure to file tax returns and report outside employment, Commander Constable and Field Chief Stringer decided to suspend Kuklinski's security clearance. Kuklinski argues that he is not challenging the merits or process of his security clearance renewal, but rather Defendant's independent conduct, namely launching "their own, unjustified, unwarranted, and unauthorized investigation including placing him on ice in the maintenance building." Kuklinski contends that "U.S. management without portfolio in this area became amateur detectives, intent on getting Insp. Kuklinski's clearance revoked." And he asserts that "Stringer was determined to get Insp. Kuklinski's clearance revoked, for whatever reasons, despite knowing she had no authority to do so."

Defendant argues that Kuklinski's relocation to the maintenance building was necessary because, pending his security clearance, he could not enter the main building unescorted. Everyone who enters the main building must have an appropriate clearance level or otherwise be escorted by someone who does.[3] Defendant also relies on *Tenenbaum v. Caldera*, where the plaintiff brought suit under Title VII against the Army, claiming that the Army targeted him for criminal investigation and revocation of his security clearance because of his religion. 45 F. App'x at 417. We held that "[b]ecause Title VII would require a court to weigh the validity of the

---

[3] During argument, Kuklinski's counsel asserted that Kuklinski could have reached his office without having a security clearance. The record does not provide support for this late assertion.

executive's proffered reasons for revoking a security clearance, judicial review would constitute precisely the sort of interference criticized in *Egan*." *Id.* (collecting cases).

Kuklinski does not challenge the merits of his clearance suspension on its face; he attacks the qualifications of the officers handling the investigation and determination of his clearance, and he questions the motives of those who became involved in the process. But Kuklinski makes these claims without evidentiary support, leaving for evaluation only the Mint's proffered evidence for suspending his clearance. As *Tenebaum* and *Egan* make clear, we lack jurisdiction to do just that. While an official's lack of qualifications or improper motive might pass muster under *Egan* if there is evidence to support such claims unrelated to the security clearance determination, *see Hale*, 845 F.3d at 230; *Rattigan*, 689 F.3d at 768, here Kuklinski falls short of meeting that burden.

Even if Kuklinski's allegations were considered, he fails to demonstrate how Defendant's proffered reasons for the investigation and suspension of his security clearance—failure to file his tax returns and failure to report outside employment—were pretextual. He offers neither argument nor evidence (other than mere speculation and conjecture) and provides no supporting case authority. Kuklinski's argument fails.

### III. CONCLUSION

A court must carefully consider the record when evaluating claims of retaliation and determining whether the defendant's proffered reasons for the retaliation were pretextual. Kuklinski has failed to provide evidence in the record or to marshal arguments that satisfy his burden to show pretext under the *McDonnell Douglas* framework. We **AFFIRM** the district court's grant of summary judgment to the Defendant.