RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JEFFREY KALICH,

        *Plaintiff-Appellant,*

    *v.*

AT&T MOBILITY, LLC,

        *Defendant-Appellee.*

No. 10-2554

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-14781—David M. Lawson, District Judge.

Decided and Filed:  May 10, 2012

Before:  GIBBONS, GRIFFIN, and DONALD, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Eric I. Frankie, Detroit, Michigan, for Appellant.  Richard M. Tuyn, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC, Bloomfield Hills, Michigan, for Appellee.

─────────────────

**OPINION**

─────────────────

BERNICE BOUIE DONALD, Circuit Judge.  Plaintiff-Appellant Jeffrey Kalich filed a complaint against his former employer, Defendant-Appellee AT&T Mobility, LLC, ("AT&T"), in state court pursuant to Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").  Kalich alleged that his immediate supervisor David Rich created a hostile work environment by subjecting Kalich to comments that constituted sexual harassment.  AT&T removed the action to federal court.  On November 2, 2010, the district court granted AT&T's motion for summary judgment, finding that Kalich's claims were not

actionable under the sexual harassment hostile work environment provisions of ELCRA. Kalich appealed.  For the reasons stated herein, we AFFIRM.

## I. BACKGROUND

On May 19, 2008, AT&T hired Kalich as a retail store manager in Clarkston, Michigan. Rich, AT&T's area sales manager, was Kalich's immediate supervisor.  Rich visited Kalich's store approximately ten times per month.  During the course of Kalich's employment, Rich made various comments to Kalich that Kalich found upsetting and offensive.  These comments are summarized chronologically as follows:

On June 12, 2008, Rich said to Kalich, "Oh I like your glasses.  You should change your name to Virginia or Margaret.  No.  I like Virginia the best."  Throughout the rest of that day, Rich continued to refer to Kalich as Virginia, Margaret, and Peggy in front of other staff members.

On August 7, 2008, Rich made remarks about Kalich's dog, a Yorkshire terrier. Rich asked Kalich, "What kind of dog is that?  Oh, how cute.  It figures."  Rich later said, "That's the perfect dog for you.  What's his name?  Fluffy, Oliver?  Okay.  Tell Oscar–I mean Oliver or Fluffy or whatever hello."  Thereafter, Rich regularly referred to Kalich's dog by the names of Fluffy or Princess.

On December 11, 2008, Rich said to Kalich, "What?  Do you not eat?  You are wasting away.  Your pants don't even fit you right anymore.  You look like a girl." Kalich alleges Rich made these remarks while laughing, staring at Kalich's behind, and staring and pointing at Kalich's pants.

On February 13, 2009, Rich asked Kalich whether the human rights sticker on his vehicle was a "Swedish flag."  Rich asked, "What kind of flag is that on your car, a Swedish one?"  Despite Kalich's explanation that the sticker was a symbol of equal rights, Rich persisted in referring to it as a "Swedish flag."

On February 23, 2009, Rich told Kalich he should change his name to Peggy, Margaret, Mary Ann, or Susan. Rich then said, "No. I still like Virginia. Or how about Kristine, like your mom?" Rich made these comments in front of Kalich's employees.

On March 16, 2009, Rich said to Kalich, "You should sew Kristine a quilt. Come on, Virginia. You know you can sew. Dear, you know you can do it."

According to Kalich, Rich repeatedly and regularly made comments like those detailed above, but Kalich was only able to make notes of the comments on isolated occasions.

AT&T has a Code of Business Conduct that forbids unlawful harassment of any kind, including sexual harassment. The Code provides internal procedures by which employees can report violations. Rather than pursue these internal options, Kalich retained an attorney in March 2009. Kalich's attorney sent a letter to Ken Gaffga, Rich's supervisor, on March 19, 2009. The letter described Rich's comments and conduct towards Kalich and demanded that the conduct cease immediately. The letter further asked that Kalich "be placed in a work environment free of gender based [sic] harassment" and that "labor relations and/or AT&T's counsel contact me forthwith" regarding resolution of Kalich's complaints.

On March 25, 2009, Rich allegedly called Kalich a necrophiliac, laughed, and stated in the presence of Kalich's employees that Kalich had sex with dead people. Although Kalich had no further contact with Rich after this incident, Rich allegedly made similar comments the following day in the presence of several of Kalich's co-workers. Rich later stated that he confused "narcolepsy," a condition from which Kalich apparently suffers, with necrophilia, and that this confusion led him to make a comment about Kalich being a necrophiliac. At the time he made the necrophilia comment, Rich was not yet aware of the letter that Kalich's attorney sent to Gaffga complaining of Rich's comments.

Sometime during the first week of April, Kalich requested a thirty-day leave of absence. Gaffga denied Kalich's request, but authorized Kalich to take six days off.

Also in the beginning of April 2009, AT&T's equal employment opportunity ("EEO") department began an investigation in response to Kalich's complaint. On April 9, 2009, Gaffga informed Kalich that Rich would be transferred and would no longer oversee operations at Kalich's store. In addition, Rich was given a final written warning for his inappropriate comments and would be required to take classes focused on promoting a professional work environment.

On April 13, 2009, while on his leave of absence, Kalich notified AT&T of his resignation. Kalich explained that the dynamics of the work environment had changed as a result of the EEO investigation, which included interviews with all of the store employees. In addition, Kalich feared that, despite being re-assigned to the supervision of Susan Supley, he might nevertheless encounter Rich on occasion. Kalich was uncomfortable with the prospect of future encounters with Rich and, therefore, "for mental and physical health reasons . . . felt it in [his] best interest to resign." Kalich's last day of employment with AT&T was April 29, 2009.

Kalich contends that Rich's conduct amounted to sexual harassment that created a hostile work environment. In his complaint, Kalich sought to impose liability on AT&T for Rich's conduct pursuant to ELCRA, Michigan's civil rights statute. After the close of discovery, the district court granted AT&T's motion for summary judgment, finding that Kalich had failed to present evidence in support of each element of his claim. Kalich timely appealed.

## II. ANALYSIS

We review a district court's order granting summary judgment *de novo*. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After adequate time for discovery and upon motion, summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

ELCRA prohibits employers from discriminating against employees based on sex, which includes sexual harassment. *See* Mich. Comp. Laws § 37.2102; *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915 (Mich. 2000). Michigan law defines "sexual harassment" as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature" under circumstances where submission to the conduct or communication is made a "quid pro quo" of gaining or keeping employment or where the conduct or communication "has the purpose or effect of substantially interfering with an individual's employment. . . ." Mich. Comp. Laws § 37.2103(i).

Sexual harassment that substantially interferes with an individual's employment is referred to as "hostile work environment" harassment. *Radtke v. Everett*, 501 N.W.2d 155, 161 (Mich. 1993). Kalich does not allege that Rich conditioned his continued employment upon submission to any sexual advances or overtures. Rather, Kalich alleges that Rich's conduct created a hostile work environment. To establish a *prima facie* case of hostile work environment based on sexual harassment, Kalich was required to present evidence that: (1) he belonged to a protected group; (2) he was subjected to communication or conduct on the basis of sex; (3) he was subjected to unwelcome sexual conduct or communication; (4) the unwelcome conduct or communication was intended to or did substantially interfere with the plaintiff's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. *Haynie v. State*, 664 N.W.2d 129, 133 (Mich. 2003); *Chambers*, 614 N.W.2d at 915.

In granting AT&T's motion, the district court found that there was no dispute of material fact and that Kalich failed to present sufficient evidence on each element of his claim to withstand summary judgment. The court described Rich's conduct as "crude, bullying, [and] despicable" but found that it was "not actionable under the sexual harassment hostile work environment provisions of ELCRA." We agree.

**A.  Protected Group**

As to the first element of a hostile work environment sexual harassment claim, Kalich met his burden.  The Michigan Supreme Court has held that "all employees are inherently members of a protected class in hostile work environment cases because all persons may be discriminated against on the basis of sex." *Haynie*, 664 N.W.2d at 133 (quoting *Radtke*, 501 N.W.2d at 162).  Accordingly, Kalich presented sufficient evidence of the first element of his *prima facie* case.

**B.  Communication or Conduct "on the Basis of Sex"**

To establish the second element of his hostile work environment claim, Kalich needed to show that "*but for* the fact of [his] sex, [he] would not have been the object of harassment." *Id.* (emphasis added) (quoting *Radtke*, 501 N.W.2d at 163).  This element is derived from the language  in section 37.2202(1)(a) of ELCRA which prohibits discrimination "because of . . . sex." *Id.* at 308.  Stated differently, a plaintiff must show that the harassment was gender-based. *See Barbour v. Dep't of Soc. Servs.*, 497 N.W.2d 216, 218 (Mich. Ct. App. 1993) (per curiam).  A plaintiff can make this showing with evidence that "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 765 (6th Cir. 2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  Harassment or discrimination because of a person's sexual orientation or perceived sexual orientation is not prohibited conduct under ELCRA. *Barbour*, 497 N.W.2d at 217-18.

In *Vickers*, we evaluated a male plaintiff's claim of same-gender sexual harassment utilizing the Supreme Court's approach in *Oncale*.[1]  We identified three ways a male plaintiff could establish the "because of sex" element of a hostile work environment claim based on same-gender sexual harassment:  (1) by showing that the

---

[1]Although *Vickers* was a case that arose under Title VII, Michigan courts afford substantial consideration to federal precedent when interpreting analogous provisions of ELCRA. *See Chambers*, 614 N.W.2d at 917; *Radtke v. Everett*, 471 N.W.2d at 663; *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 69-70 (Mich. Ct. App. 2001).

harasser making sexual advances acted out of a sexual desire; (2) by showing that the harasser was motivated by general hostility to the presence of men in the workplace; or (3) by offering "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Vickers*, 453 F.3d at 765 (quoting *Oncale*, 523 U.S. at 80-81).

The district court properly concluded that Kalich failed to establish that Rich's conduct towards him was "because of" his gender. In his deposition, Kalich admitted that Rich made no apparent sexual advances toward him, nor indicated any sexual interest in him. Kalich did not present any evidence that Rich had a general hostility to men in the workplace, and Kalich did not offer comparative evidence that Rich generally treated women in the workplace more favorably than men. In fact, Kalich stated in his deposition that Rich was rude, aggressive and generally unapproachable towards *all employees*. Kalich even recounted a specific instance in which one of his colleagues—a female manager at another store location—called Kalich in tears after a meeting in which Rich "yelled and screamed" at her.

By all accounts, Kalich established that Rich created very unpleasant working conditions for the employees that were in Rich's chain-of-command. While Kalich seemed to be the primary target of Rich's campaign of teasing and name-calling, there is no evidence that Rich singled Kalich out "because of" his gender. In fact, Kalich acknowledged in his deposition that he believed Rich made the derogatory comments because he knew or suspected that Kalich was gay. Under Michigan law, as under Title VII, sexual orientation is not a protected classification. *Barbour*, 497 N.W.2d at 217-18. Thus, harassment or discrimination based upon a person's sexual orientation cannot form the basis of a cognizable claim. *Id.* Moreover, teasing and name-calling, while inappropriate in a professional environment, are insufficient to state a claim for sexual harassment. *See Schemansky v. California Pizza Kitchen, Inc.*, 122 F. Supp. 2d 761, 775-76 (E.D. Mich. 2000); *Quinto v. Cross and Peters Co.*, 547 N.W.2d 314, 320-21 (Mich. 1996) (noting that conduct that is demeaning or humiliating but that does not evidence hostility towards a protected class is not actionable under ELCRA).

In sum, the district court properly concluded that Kalich did not present sufficient evidence on this element of his claim to withstand summary judgment.

## C. Unwelcome Sexual Conduct or Communication

In addition to the requirement that he was singled out because of his gender, Kalich was also required to present evidence that he was "subjected to unwelcome sexual conduct or communication." *Haynie*, 664 N.W.2d at 133. This element is derived from the language in § 37.2103(i) of ELCRA, which states that "[s]exual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature. . . ." *Id.* The Michigan Supreme Court has held that "actionable sexual harassment requires conduct or communication that *inherently* pertains to sex." *Corley v. Detroit Bd. of Educ.*, 681 N.W.2d 342, 345 (Mich. 2004) (defining "sexual nature"); *see also Haynie*, 664 N.W.2d at 135-36; *Barrett*, 628 N.W.2d at 74-75. Discriminatory conduct that is gender-based but not sexual in nature does not constitute sexual harassment. *Haynie*, 664 N.W.2d at 135.

> In his brief, Kalich argues:

> David Rich's conduct towards Plaintiff was of an "inherently" sexual nature because: (1) Rich's admitted comments to and about Plaintiff that he was a necrophiliac are by definition of a sexual nature, (2) Rich's repeated remarks to Plaintiff that related to his gender and implied that he was a homosexual when Plaintiff never discussed his sexual orientation with Rich inherently relate to sex because they were intended to "bring him out of the closet," and (3) Rich made some of his offensive remarks to Plaintiff in such a manner that manifested his sexual desire for Plaintiff.

Putting aside the necrophiliac comment, which is discussed below, Kalich contends that comments designed to "bring him out of the closet" as a homosexual man inherently relate to sex. Kalich cites *Barbour* for the proposition that such comments "state[] a claim for same gender [sic] hostile work environment sexual harassment because such conduct directly relates to gender."

Kalich's reading of *Barbour* is simply wrong. Barbour filed a complaint pursuant to ELCRA, alleging that throughout his employment with the defendant he was the victim of sexual harassment by co-workers and supervisors. 497 N.W.2d at 217. Barbour claimed he was subjected to various forms of verbal and nonverbal harassment in efforts to get him to "come out of the closet . . . and to engage in homosexual sex." *Id.* There was no dispute that Barbour's sexual orientation constituted the subject matter of the harassment. *Id.* The trial court concluded that harassment or discrimination based upon a person's sexual orientation was not conduct prohibited by ELCRA and granted summary disposition in favor of the defendant. *Id.* at 218. The Michigan Court of Appeals affirmed this portion of the trial court's judgment. *Id.*

However, the court of appeals found that the trial court erred in dismissing another portion of Barbour's complaint "insofar as it alleged *specific homosexual advances directed to him by his supervisor.*" *Id.* (emphasis added). The court found that "these actions were directly related to plaintiff's status as a male, and thus render[ed] the act applicable." *Id.* Therefore, *Barbour* is better understood as standing for the proposition that, regardless of the target's sexual orientation, a supervisor's unwanted sexual advance is conduct that *could* state a claim for hostile work environment sexual harassment.[2] After all, it is conduct that is directed at a particular person "because of" that person's gender (i.e., the gender to which the harasser is attracted), *and* it is conduct that is inherently sexual in nature. Therefore, the part of Barbour's complaint that stated a cognizable claim was based not on Barbour's status as a homosexual or on the harasser's motivation to "bring him out of the closet," but rather on the fact that Barbour was subjected to unwanted sexual advances, conduct which was unquestionably "sexual in nature" and "because of" Barbour's gender.

Kalich has not alleged that Rich made any sexual advances towards him. He presented no evidence that Rich's teasing was borne out of a sexual desire for Kalich or even that Rich himself is homosexual. Although Kalich argues in his brief that the

---

[2]Of course, the conduct would still have to be either pervasive enough or of such an extreme nature as to satisfy the fourth element of a "hostile environment" claim.

comments referring to him as a girl "demonstrate[] Rich's sexual desire for him," he bases this conclusion on the fact that "Rich made these comments while pointing and staring at [Kalich's] behind." According to Kalich, "It is not a leap to believe that Rich was sexually attracted to [him] because [Rich] was staring at [his] behind while commenting about his physique." While this argument boasts a certain logic, we must base our decision on evidence, and the evidence of record does not support the conclusion Kalich urges. In Kalich's deposition, counsel for AT&T pointedly asked him, "Did Rich ever indicate that he had a sexual interest in you?" Kalich's response was an unequivocal "no." Kalich's contention on appeal that a certain remark "could arguably manifest Rich's sexual desire for [him]," is thus belied by his prior testimony to the contrary. In any event, the standard is not whether certain conduct or comments could "arguably manifest" sexual desire, but whether the conduct or comments "*inherently pertain* to sex." Rich's comments do not meet that standard.

Viewing the evidence in the light most favorable to Kalich, the vast majority of the comments Kalich cited in his complaint cannot be construed as sexual in nature. Rich's remarks about Kalich's glasses, or referring to Kalich by various female names, or about his "cute" dog do not inherently pertain to sex, nor do Rich's remarks about the fit of Kalich's clothes, his sewing abilities, or that he was "wasting away" and "looked like a girl." The district court acknowledged that Rich's comment referring to Kalich as a necrophiliac, however, was sexual in nature. Nevertheless, Kalich presented no evidence that Rich directed this comment at him "because of" his gender. Without evidence of some gender-based animus, the mere fact that Rich made a comment to Kalich that was sexual in nature cannot form the basis of a cognizable claim. *See Oncale*, 523 U.S. at 80 ("We have never held that workplace harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or connotations. The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.") (internal citations omitted).

**D.  Intimidating, Hostile or Offensive Work Environment**

Another essential component of a hostile work environment claim requires the plaintiff to show that the unwelcome sexual conduct or communications were intended to or did in fact substantially interfere with the plaintiff's employment or created an intimidating, hostile, or offensive work environment. *Haynie*, 664 N.W.2d at 133.  "The essence of a hostile work environment action is that one or more supervisors or co-workers create an atmosphere so infused with hostility toward members of one sex that they alter the conditions of employment for them." *Radtke*, 501 N.W.2d at 163 (citations omitted).  The existence of a hostile work environment "shall be determined by whether a reasonable person, in the totality of the circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive work environment." *Id.* at 167.  Factors relevant to the inquiry include: the frequency of the discriminatory conduct; the conduct's severity; whether the conduct was physically threatening or humiliating or merely an offensive utterance; and whether the conduct unreasonably interfered with the employee's work performance.  *See Quinto*, 547 N.W.2d at 320 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  Except in the case of extreme incidents such as rape or sexual assault, a single, isolated event is typically insufficient to create a hostile work environment.  *See Radtke*, 501 N.W.2d at 168 & n.40.

The single necrophilia comment that Rich directed at Kalich, the only comment Kalich cites that could conceivably constitute sexual harassment, is not the sort of "extremely traumatic experience" that Michigan courts recognize as creating a hostile work environment based on a single occurrence.  Under the applicable standard, a reasonable person would not perceive this single remark as being so severe and extreme as to create an objectively hostile work environment. The remainder of Rich's remarks, though unprofessional and perhaps subjectively hurtful, embarrassing, or offensive to Kalich, are not actionable under ELCRA because, as discussed above, they are not

inherently sexual in nature.   Therefore, the record before the district court was insufficient to withstand summary judgment on this element of Kalich's claim as well.

**E. Respondeat Superior**

The final element of the *prima facie* case for hostile work environment sexual harassment requires the plaintiff to establish that the employer had either actual or constructive notice of the hostile work environment and failed to take prompt and adequate remedial action. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 470-71 (6th Cir. 2009) (citing *Sheridan v. Forest Hills Pub. Schs.*, 637 N.W.2d 536, 542 (Mich. Ct. App. 2001)).  "[A]n employer can be vicariously liable for a hostile work environment *only if* it 'failed to take prompt and adequate remedial action upon reasonable notice of the creation of a hostile work environment.'" *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 863 (Mich. 2005) (emphasis added) (quoting *Chambers*, 614 N.W.2d at 918).  To establish actual notice, a plaintiff must show that he reported the harassment to someone in "higher management"—that is, to "someone in the employer's chain of command who possesses the ability to exercise significant influence in the decision-making process of hiring, firing, and disciplining the offensive employee." *Sheridan*, 637 N.W.2d at 542–43.  A plaintiff can establish constructive notice by showing that the harassment was so pervasive as to warrant an inference that the employer had actual knowledge or to charge the employer with constructive knowledge. *Sheridan*, 637 N.W.2d at 542. When determining the adequacy of the employer's remedial action, the proper inquiry is "whether the action reasonably served to prevent future harassment of the plaintiff." *Chambers*, 614 N.W.2d  at 919.

AT&T did not have actual notice of Kalich's complaint until sometime on or after March 19, 2009, the date that Kalich's attorney drafted the letter to Gaffga.  On March 27, 2009, Marybeth Dunne, a Senior EEO Consultant with AT&T, was assigned to conduct the investigation into Kalich's complaint.  Dunne instructed Rich not to visit

Kalich's store during the pendency of the investigation, and Rich complied.[3]  In the course of her investigation, Dunne interviewed Kalich, Rich, and the other employees of the Clarkston store.  During an interview, Dunne specifically asked Kalich what type of resolution he was seeking, to which Kalich responded, "I don't know."  Dunne completed her investigation on April 7, 2009 and concluded that Rich had made "inappropriate comments" to Kalich.  Dunne recommended that AT&T issue Rich a disciplinary warning, require Rich to attend special training, and remove Rich from Kalich's chain-of-command, all of which AT&T did.  On April 9, 2009, AT&T informed Kalich that Susan Suppley would be his new supervisor.  Four days later, Kalich notified Gaffga of his resignation.

Based on the record, Kalich presented no evidence that AT&T failed to adequately rectify the problem upon receiving notice.  Kalich's brief emphasizes that AT&T did not formalize Rich's transfer or issue the final disciplinary warning until nearly one month after his letter of complaint, but it is clear that an investigation began within a week of Kalich's letter and concluded only ten business days later.  Performing an adequate investigation, which in this case included an interview of every employee at the Clarkston store, takes time.  Moreover, upon the initiation of the investigation, AT&T instructed Rich to have no further contact with Kalich, and ultimately, AT&T permanently reassigned Rich to a different region.  This resolution certainly was designed to prevent future harassment of Kalich.  Thus, under the applicable standard, AT&T took adequate remedial measures and there is no basis upon which to impose respondeat superior liability.  *See Chambers*, 614 N.W.2d at 919.

### III. CONCLUSION

Because Kalich has failed to produce sufficient evidence to establish each element of his claim, we **AFFIRM** the district court's summary disposition in favor of AT&T.

---

[3]Rich made the necrophilia comment to Kalich during the one-week interim between the time Kalich's attorney drafted the letter and the time AT&T launched its formal investigation.  At the time, Rich was unaware of Kalich's complaint.