Dayna NEWTON, Plaintiff–Appellant,

v.

OHIO DEPARTMENT OF REHABILI-
TATION AND CORRECTION–TOLE-
DO CORRECTIONAL INSTITUTION,
Defendant–Appellee.

No. 11–3681.

United States Court of Appeals,
Sixth Circuit.

Aug. 23, 2012.

BEFORE: DAUGHTREY and CLAY, Circuit Judges; CLELAND, District Judge.*

CLAY, Circuit Judge.

Plaintiff Dayna Newton appeals the district court's order granting summary judgment to Defendant Ohio Department of Rehabilitation and Correction–Toledo Correctional Institution (ODRC) in her suit alleging sexual harassment, hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) *et seq.*

For the reasons that follow we **AFFIRM** the judgment of the district court.

## BACKGROUND

On July 24, 2000, Defendant hired Plaintiff as a correctional officer (C.O.) for their Lima Correction Institution. Plaintiff was transferred from the Lima facility to the Toledo Correctional Institution in March 2002 and volunteered for an assignment in the Delta 1 Control Room (control room). The control room is a secure, locked room surrounded by tinted glass. Plaintiff was responsible for observing two television screens that monitored the flow of inmate and staff traffic between the prison cells and the stairways; remotely locking and unlocking approximately twenty doors; monitoring radio traffic; testing "man down" alarms; controlling the playing of institutional movies for the inmates; and distributing batteries to the C.O.s on foot patrol for use in their radios.

### A. Sexual Harassment Incident

Plaintiff's claims of sexual harassment are based on a February 19, 2009 incident involving Sergeant Kevin Logan (Logan). Plaintiff stated at her deposition that she was working in the control room when at approximately 11 a.m., Logan entered and spoke to Plaintiff about a situation with one of the inmates who was becoming very hostile and threatening to the other C.O.s and inmates. Logan asked Plaintiff for her opinion about where the inmate should be placed. During their conversation, Logan approached Plaintiff from behind and began to rub her shoulders and make a groaning noise for a few seconds.[1] Plain-

---

* The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. At some point during the conversation, Plaintiff permitted Officer Davis, another

C.O., to enter the control room for approximately five minutes. Although Officer Davis remained in the control room, it is unclear from the record whether Officer Davis no-

**560**

tiff was sitting with her back towards Logan when she felt his hands first touch her shoulders and then move closer to her breast. Plaintiff stated that she looked over her shoulder, gave Logan "a look," and he removed his hands. According to Plaintiff, Logan continued his discussion about the inmate and then walked around to the right side of Plaintiff, grabbed her hand, and "swiped it across his groin area, unzipped his pants, then turned [her] hand upwards and ejaculated in [her] hand." Plaintiff stated that immediately after Logan ejaculated on her hand she heard the buzzer and let another C.O., Shannon Kocsis (Kocsis), into the control room. After Kocsis entered, Logan left and Plaintiff went upstairs to the bathroom and placed his semen into a plastic bag. Plaintiff returned and let Kocsis out of the control room and then called her friend, Officer Candace Whitmore (Whitmore). Plaintiff stated that she told Whitmore that Logan ejaculated on her hands. Officer Whitmore encouraged Plaintiff to report the incident. Plaintiff then called Officer Dawn Schaber–Goa (Schaber–Goa), a master control officer and friend. Plaintiff told Officer Schaber–Goa about the incident with Logan. Officer Schaber–Goa advised Plaintiff to speak with a "lieutenant, or a white shirt, or a captain" and to contact Stacey Stidham (Stidham), the Ohio State Highway Patrol Trooper assigned to the Toledo facility. Plaintiff was unable to reach Stidham so she left a voicemail.

That same day, Plaintiff contacted the shift commander's office to speak with her supervisor, Lieutenant Kimberly Henderson (Henderson). Plaintiff discussed the incident with Henderson and also showed Henderson the plastic bag that contained Logan's semen. Henderson recommended that Plaintiff report the incident. Henderson also mentioned that Logan had a history of this type of conduct. Henderson relieved Plaintiff from her duties in the control room, and she went to the Warden's administrative office to file an official incident report. On the incident report, Plaintiff indicated that the massage and conversation were consensual, but the groping of his penis was not consensual.

**B. The ODRC Conducts an Internal Investigation of Plaintiff's Complaint**

As a result of the incident report two separate investigations were initiated—one by the ODRC and the other by the Ohio State Highway Patrol. The ODRC began its investigation of Plaintiff's complaint on the same day of the incident, February 19, 2009. During the course of the investigation, Plaintiff also spoke with Meredith Renna (Renna), the victim coordinator assigned to review Plaintiff's incident report. Renna advised Plaintiff of her victim's rights and also referred her to the critical incident support team, which is a group that provides support to victims of harassment. Plaintiff elected to speak with a support team member, Cindy Terrazas, who was also the warden's secretary. Terrazas informed Plaintiff about various support programs, including the Employee Assistance Program, and they also discussed the incident involving Logan.

Warden Robert Welch (Welch) told Plaintiff that they were placing Logan on paid administrative leave. He also requested that Plaintiff take administrative leave and seek any additional help necessary. Plaintiff also received a form letter from ODRC's human resources to confirm that she was on paid administrative leave pending the investigation. Welch assigned Sean Bowerman (Bowerman) to investigate the incident. Bowerman reviewed the incident report and also conducted in-ticed the interaction between Plaintiff and Logan.

terviews with Plaintiff, Logan, and others who had knowledge of the incident. During the course of the investigation, Bowerman discovered that the cameras in the control room were not working on the day of the incident. Bowerman concluded that the incident between Plaintiff and Logan was consensual, and submitted a report to Welch for his review on April 21, 2009.

After reviewing the report, the ODRC Labor Relations Officer, Jeff Richmond (Richmond) prepared a pre-disciplinary conference notice to Plaintiff on May 14, 2009. The notice advised Plaintiff that she violated Rules 37 and 49 of the ODRC Standards of Employee Conduct and that a hearing was scheduled for May 27, 2009. Plaintiff and her union representative attended the hearing. A Hearing Officer's Report was issued on June 3, 2009, finding just cause to believe that Plaintiff violated ODRC's policy by engaging in an inappropriate relationship while on the work premises.

Welch reviewed the reports prepared by Investigator Bowerman and Officer Richmond. After reviewing the documents, Welch concluded that Plaintiff and Logan's conduct was in violation of ODRC's Standards of Employee Conduct and both were subsequently terminated from their respective positions on June 25, 2009. Logan accepted ODRC's offer to convert his removal to a resignation. Plaintiff filed a grievance, which went to arbitration on November 30, 2009. The arbitrator determined that ODRC presented clear and convincing evidence that Plaintiff and Logan engaged in a consensual act and there was sufficient just cause for Plaintiff's removal.

### C. Ohio State Highway Patrol Conducts an Independent Investigation into Plaintiff's Allegations

In addition to the ODRC's internal investigation, the Ohio State Highway Patrol also conducted a review of Plaintiff's complaint. At approximately noon on February 19, 2009, Bowerman notified Stidham about the incident involving Plaintiff and Logan. Bowerman briefed Stidham on the allegations and gave her the plastic bag that allegedly contained semen from Logan. Stidham sent the bag to a laboratory for testing. Next, Stidham conducted an interview with Plaintiff but did not take any notes during the interview. At the conclusion of the interview, Stidham provided a written summary of the incident, which Plaintiff reviewed and signed off. Stidham continued with her independent investigation and interviewed a number of ODRC employees who had knowledge of the incident, including Henderson and Kocsis. Stidham also attempted to interview Logan, but he refused to answer any questions. Stidham concluded that the totality of the evidence did not support Plaintiff's claim of sexual harassment. In making this determination, Stidham found Plaintiff to be deceitful and that her statements about the alleged sexual harassment did not make sense, and that Plaintiff was purposefully trying to retaliate against Logan. Stidham based her finding on two statements that Plaintiff made during their interview. According to Stidham, Plaintiff made the comment "I've got him now," and Plaintiff also stated that she "just want[ed] to make sure it didn't happen again." These statements taken together with the preservation of the semen led Stidham to conclude that Plaintiff was seeking revenge against Logan. Stidham then consulted with the Toledo City Prosecutor about the incident and notified him that she was going to request a polygraph for both Plaintiff and Logan.

In March 2009, Stidham and Plaintiff had a phone conversation about scheduling a polygraph but Plaintiff ultimately decided not to take a polygraph on the advice of her attorney. During the conversation, Plaintiff also mentioned that a

former C.O., Renee Adams (Adams), also had a similar incident with Logan and Plaintiff requested that Adams testify on her behalf. According to Stidham, Plaintiff preferred to initiate contact with Adams herself and then Adams would contact Stidham if she was willing to testify in Plaintiff's case. Stidham stated that Adams never contacted her and Stidham chose not to investigate the alleged incident between Adams and Logan.

Stidham met with the prosecutor to discuss possible charges against Plaintiff. Stidham contacted Plaintiff and requested that she come to the correctional facility. Stidham met with Plaintiff and discussed the finding of her investigation. Stidham concluded that based on the totality of the circumstances, Plaintiff and Logan engaged in a consensual act and that both would be criminally charged with dereliction of duty. The conversation was not recorded. On September 16, 2009, Plaintiff accepted a plea deal to an amended charge of attempted dereliction of duty.

Prior to her termination, on March 13, 2009, Plaintiff filed a sexual harassment complaint with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission (EEOC). Following her discharge, Plaintiff filed a second charge with the OCRC and the EEOC on June 30, 2009, and alleged retaliation in the form of harassment for the filing of her first complaint. The United States Department of Justice, Civil Rights Division issued a Right to Sue letter on December 29, 2009.

Plaintiff filed her complaint in the United States District Court for the Northern District of Ohio on March 26, 2010, alleging sex discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and also a sexual harassment claim pursuant to the Ohio Revised Code sections 4112.02(a) and 4112.99

against Defendant. Plaintiff sought monetary and equitable relief as well as punitive damages. Plaintiff's state law claims were dismissed by stipulation of the parties on July 13, 2010. Defendant moved for summary judgment on the remaining claims on January 31, 2011. The district court granted summary judgment to Defendant in an order issued on May 19, 2011. Plaintiff now appeals.

## DISCUSSION

### I. Standard of Review

We review a district court's grant of summary judgment *de novo. Farhat v. Jopke,* 370 F.3d 580, 587 (6th Cir.2004) (citation omitted). The evidence in the record is reviewed in the light most favorable to the non-moving party, and all reasonable inferences are drawn to the benefit of that party. *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 576–77 (6th Cir.2004) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Summary judgment is appropriate only where the evidence raises no genuine issue of material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation and internal quotation marks omitted).

### II. Hostile Work Environment

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

Plaintiff brings her Title VII action under a hostile work environment theory. Under this theory, a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," violates Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and internal quotation marks omitted). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (citation and internal quotation marks omitted).

■ As an initial matter, we must determine whether Plaintiff's hostile work environment claim is based on harassment by a supervisor or by a co-worker. If Logan is determined to be Plaintiff's supervisor, then "an employer is vicariously liable 'for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee.'" *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir.1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). However, if Logan is classified as a co-worker, then "[a]n employer is liable if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir.1999) (citation and internal quotation marks omitted).

The district court found that Logan was not Plaintiff's supervisor because Logan possessed no real authority over Plaintiff or any other C.O. In light of this finding, the district court analyzed Plaintiff's claim under the co-worker theory of hostile work environment and concluded that Defendant was not vicariously liable for Plaintiff's actions. Plaintiff argues that Logan was her supervisor at the time of the incident. In support of this argument, Plaintiff states that Logan was not only in a superior position, but she also claims that Logan exercised authority and control over her and the other C.O.s.

A supervisor is "an individual who serves in a supervisor position and exercises significant control over plaintiff's hiring, firing or conditions of employment." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir.1994) (citation and internal quotation marks omitted). Based on this definition, Plaintiff must establish that Logan exercised significant control and authority over her hiring, firing, or conditions of employment. Plaintiff cannot meet this burden. The record does not indicate that Logan exercised any control over personnel matters nor did Logan have any authority over Plaintiff to terminate her or place conditions on her employment. Although there is evidence that supports Plaintiff's position that Logan is a higher ranking official—different pay scales and job responsibilities—Logan's deposition establishes that he did not have any supervisory authority over Plaintiff. Plaintiff's claim is further weakened by the fact that Logan was not Plaintiff's direct supervisor. Rather, the lieutenants were responsible for addressing issues of concern by the C.O.s, which included Plaintiff. Logan stated at his deposition that he was instructed to report any issues with the C.O.s to the lieutenant and the lieutenant would "try to diffuse the situation." Because Plaintiff cannot substantiate her claim that Logan was her supervisor, we will proceed to analyze Plaintiff's claim under the theory of co-worker hostile work environment.[2]

2. In addition, the parties stipulated at arbitration that Logan is not the supervisor of Plain-

To establish a prima facie Title VII claim of sexual harassment based on a hostile work environment, Plaintiff must "show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) the employer knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Valentine–Johnson v. Roche,* 386 F.3d 800, 814 (6th Cir.2004) (citation, internal quotation marks, and alteration omitted).

The parties do not dispute that Plaintiff belonged to a protected class and that the alleged harassment was because of Plaintiff's sex. Defendant also does not challenge whether the alleged harassment interfered with her work performance and created a hostile work environment. Plaintiff challenges only whether Logan's sexual harassment conduct was unwelcome and whether Defendant knew or should have known about Logan's sexual harassment behavior but failed to take the appropriate corrective action.

### A.   Unwelcomed Sexual Conduct

■ The district court concluded that the conflicting positions presented by both parties presented a disputed issue of material fact as to whether the sexual contact between Plaintiff and Logan was consensual. Plaintiff presents compelling evidence to show that Logan's conduct in the control room was not consensual. The only witnesses to the incident were Plaintiff and Logan. Plaintiff acknowledged that the shoulder massage and conversation were consensual, but that the groping and Logan's moaning sounds were unwelcomed sexual advances. Plaintiff further stated

that she did not provoke Logan to masturbate in her hand and that a reasonable person in her position would not have collected the semen and placed the contents into a plastic bag if the conduct was consensual. Finally, shortly after the incident, Plaintiff complained to both friends and her superiors about the unwelcomed conduct. She informed her supervisors of Logan's actions in a timely manner and took the appropriate steps with management to file a formal complaint.

The evidence from the record indicates that Plaintiff satisfied her burden to show that Logan's sexual conduct was unwelcomed based on the following: (1) the massage, although initially consensual on her back, became objectionable, (2) Plaintiff maintained the semen so that she had more evidence than "he said, she said"; (3) Plaintiff presented a complaint to her supervisor in a timely fashion; and (4) a reasonable person would not have come forward and subjected herself to an investigation if the incident was a consensual act. Although Defendant's investigators concluded that Plaintiff and Logan engaged in a consensual sexual act, in viewing the facts in a light most favorable to Plaintiff, there is sufficient evidence to establish a genuine dispute of material fact on this issue.

### B.   Defendant's Knowledge and Corrective Action

Next, we consider whether Defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.

■ Plaintiff argues that Defendant knew about Logan's propensity to sexually harass women in the workplace and failed to take the appropriate action. Plaintiff identifies statements made in April 2004

---

tiff and that he did not have authority over her.

by a former C.O. Renee Adams, to Monica Ford, Defendant's EEOC officer, alleging that "Logan had been harassing her." Adams later filed an OCRC charge also alleging sexual harassment, but it did not specifically name Logan. Defendant contends that Adams never submitted a formal internal complaint, however, "failure to report harassment [does] not bar a hostile work environment claim because the requirement is that the employer knew or should have known of the offensive conduct, not that the employee must report it." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 735 (6th Cir.2006) (citing *Jackson*, 191 F.3d at 663). Although the record indicates that Adams never provided any additional information to support her allegations, including details about Logan's conduct or follow up to her conversation with Ford, that discussion coupled with the OCRC charge may create an issue of material fact as to whether Defendant was on notice that Logan was engaging in inappropriate behavior.

Plaintiff also contends that other people in the workplace were aware of the sexual harassment complaints against Logan. However, the depositions of the other co-workers indicate that there were only rumors that Logan previously engaged in lewd conduct but none of that was substantiated by their testimony. "[R]umors, conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir.1992). Therefore, we may not rely on these statements as additional evidence that Defendant should have been aware of Logan's conduct. Nonetheless, Plaintiff provided sufficient evidence that Defendant had notice of Logan's previous harassing behavior.

█ Defendant contends that even if it knew or should have known that Logan harassed Adams, it "took prompt and ap-propriate corrective action in response" to address Plaintiff's complaint. There is no dispute that Plaintiff notified Defendant about the harassment. The record indicates that Plaintiff followed Defendant's procedure in filing a complaint and did not deviate from the policy. "To establish actual notice, a plaintiff must show that he reported the harassment to someone in higher management—that is, to someone in the employer's chain of command who possesses the ability to exercise significant influence in the decision-making process of hiring, firing, and disciplining the offensive employee." *Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 474 (6th Cir.2012) (citation and internal quotation marks omitted). In this case, Plaintiff notified her supervisors and reported the incident to the appropriate personnel. Based on Plaintiff's allegations, Defendant initiated a formal investigation into Logan's conduct.

An employer's response is unreasonable if it "manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Blankenship v. Parke Care Ctrs. Inc.*, 123 F.3d 868, 873 (6th Cir.1997). However, "[w]hen an employer responds with good-faith remedial action, we cannot say that the employer has itself committed an act of discrimination." *Id.* In this case, Defendant acted appropriately in investigating and responding to Plaintiff's sexual harassment claim. After receiving Plaintiff's formal complaint and incident report, Defendant immediately began an internal investigation, and there was also an independent investigation by the Ohio State Highway Patrol. Defendant scheduled meetings with Plaintiff's supervisors to discuss the incident in detail, interviewed witnesses, including Logan, and prepared a separate report of its findings. Defendant also informed Plaintiff about her victim's rights and discussed other counseling services and resources available.

During the course of the investigation, Plaintiff was placed on paid administrative leave with benefits. Both investigations concluded that Plaintiff and Logan engaged in consensual sexual conduct on the premises during work hours in violation of ODRC's policy. Plaintiff's appeal to the arbitrator following her discharge did not change that finding and conclusion. Finally, Defendant did not take any disciplinary action until after a pre-disciplinary hearing was conducted. Defendant then issued its finding that the sexual act was entirely consensual.[3]

Based on the record, Defendant acted appropriately in investigating and responding to the alleged sexual harassment and therefore, Plaintiff cannot prevail on her claim of a hostile work environment. Although we are certainly troubled by Logan's alleged actions, we cannot punish Defendant if it took "prompt and adequate remedial action upon reasonable notice of the creation of a hostile work environment." *Kalich*, 679 F.3d at 474 (citation and internal quotation marks omitted). "Rather than considering [Plaintiff's complaint] in isolation, we must consider the totality of the circumstances in determining whether the harassment was sufficiently severe and pervasive." *Randolph*, 453 F.3d at 733 (citing *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir.1997)). As a result, we conclude that Plaintiff cannot establish a claim of hostile work environment.

## III. Retaliation Claim

Plaintiff also alleges that the district court erred in dismissing her retaliation claim and argues that Defendant retaliated against her by terminating her employment after she filed her sexual harassment complaint.

To establish a prima facie case of retaliation, a plaintiff must show that "(1) she engaged in Title VII-protected activity; (2) [Defendant] knew that she engaged in the protected activity; (3) [Defendant] subsequently took an adverse employment action against [Plaintiff]; and (4) the adverse action was causally connected to the protected activity." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir.2009) (citation omitted). Retaliation may be proved through direct or circumstantial evidence. *See DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir.2004).

If a defendant satisfies its burden of showing a legitimate nondiscriminatory reason, then a plaintiff may still prevail by demonstrating to the fact-finder that Defendant's proffered reason is a mere pretext for intentional discrimination. *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir.2009). In this case, the parties do not dispute that Plaintiff satisfied the first three prongs of the retaliation analysis. The focus of this appeal is whether Plaintiff established a causal connection between the protected activity—filing a sexual harassment complaint against a coworker—and the adverse employment action—Defendant's decision to terminate her employment.

█ Plaintiff contends that there exists a close temporal proximity between the time she filed her complaint with OCRC—March 13, 2009—and the date of her termination—June 25, 2009, which is suffi-

---

**3.** Defendant also points to a post-discharge decision by an independent arbitrator that conducted its own evaluation and found that the sex act was consented to by both parties. Plaintiff admitted during arbitration that "she did not tell [Logan] to stop, pull her hand away, or call for help." She further admitted that "she did not avail herself of any of the emergency procedures of the institution," which may suggest that the conduct was consensual.

cient evidence to support her retaliation claim.

Plaintiff did not establish the fourth prong of her prima facie case because she cannot establish a casual link between the filing of her sexual harassment complaint and her termination. "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citation omitted). A causal link may be proved by either direct evidence or through temporal proximity that creates an inference of causation. *Randolph*, 453 F.3d at 737 ("[A] temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection."). However, temporal proximity alone may not support an inference of retaliatory discrimination absent other compelling evidence. *See Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir.1999); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986).

Although temporal proximity does exist in this case, Plaintiff never provided any additional evidence to support her retaliation claim. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding that three months between the protected activity and the adverse employment action was sufficient to establish a prima facie case of retaliation). We agree with the district court, which concluded that Plaintiff "never asserted, nor put forth any evidence demonstrating, she was ever denied the opportunity to return to work prior to her termination." Moreover, "[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case." *Dixon v. Gonzales*, 481 F.3d 324, 335 (6th Cir.2007) (citation omitted). As the district court notes, Plaintiff understood Defendant's decision to place her on administrative leave and did not view this as a punitive measure as she continued to receive her pay and health benefits. In addition, there is no evidence in the record to show that Plaintiff requested to be reinstated in her position during the investigation.

■ Even assuming that Plaintiff demonstrated a prima facie case of retaliation, Defendant presented a legitimate non-discriminatory reason for Plaintiff's termination. Defendant terminated Plaintiff not for filing her sexual harassment complaint, but for engaging in consensual sex in the workplace in violation of ODRC's policy. Not only does this evidence undermine Plaintiff's ability to show a causal connection between her protected activity and the adverse employment action, it also shows that Defendant had a legitimate, non-discriminatory reason for its decision to terminate Plaintiff. Therefore, Plaintiff cannot prevail on her retaliation claim.

## CONCLUSION

For the reasons discussed above, we **AFFIRM** the judgment of the district court granting summary judgment to Defendant.