NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0716n.06

No. 13-5055

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Aug 02, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHN D. TURNER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF PARIS, KY, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

Before:  BATCHELDER, Chief Judge; COOK, Circuit Judge; O'MALLEY, Circuit Judge.[*]

COOK, Circuit Judge.  Plaintiff-Appellant John Turner appeals the district court's grant of summary judgment to defendant, City of Paris, Kentucky (the "City"), dismissing his Americans with Disabilities Act-based claim ("ADA"). 42 U.S.C. § 12101 *et seq*.  Turner asserts that the City should have offered him permanent employment at its recycling plant after a back injury rendered him unable to perform his duties at the City's wastewater treatment facility.  We AFFIRM.

I.

Turner began working at the City's wastewater treatment plant in September 2006 as a collections operator.  In April 2010, Turner injured his back while installing a section of pipe,

---

[*] The Honorable Kathleen M. O'Malley, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

leaving him unable to lift more than 20 pounds occasionally or 10 pounds frequently. The City's workers' compensation insurance covered Turner's medical treatment. After taking some time off to heal, Turner resumed working by the end of the month. Turner eventually recovered to the point of being able to lift 30 pounds occasionally and 10 pounds frequently (30/10 lifting restrictions). Accounting for Turner's physical limitations, the City temporarily assigned him to "light duty" work, first at the wastewater plant and then in the City's recycling center. Turner understood this to be a temporary arrangement, as he put it, "[un]til further notice." Around the same time, two other City employees—George Wheeler and David Caswell—began working in the recycling center due to work-related injuries. Wheeler began his four-month stint at the recycling center in 2010, while recovering from a back injury. Caswell's injury occurred in late December 2010, consistent with Wheeler's recollection that Caswell started working at the recycling center after Turner.

Employees' responsibilities at the recycling center fit into three general categories: receiving, sorting, and baling recyclables brought into the plant from several sources. The receiving duties entail unloading herbies (rolling trash cans) twice a day, three days per week. Unloading the herbies requires lifting them over a "pretty good size lip" onto the loading dock and, once loaded, maneuvering them around the recycling plant. Though generally considered "light" work, the full herbies' weight exceed Turner's restrictions, and he often enlisted others to lift the herbies onto the dock for him. Gary Barbee, the recycling center supervisor, further observed: "the herbies were frequently heavy and, in order to move one, a worker would have to tilt it back, pull it to where it needed to be and then lift it back up to an upright position." The receiving function also calls for

accepting recycling deliveries directly from the City's residents. The residential deliveries, which come into the facility daily, require workers to lift and unload recycling bags weighing between 30 to 50 pounds.

Several City employees testified that running the plant is generally a two-person job. Turner suggests, however, that the recycling center supplies work for three full-time workers, though he mentions he "was frequently the only employee working at the recycle center."

Several months after his reassignment, Turner's wife suffered a head injury, prompting him to take time off under the Family and Medical Leave Act ("FMLA"). By October 2010, Turner's treating physician, Dr. Thomas Menke, concluded that Turner's improvement reached a plateau, and recommended permanent 30/10 lifting restrictions. After learning that Turner's restrictions became permanent, the City shifted its focus from temporary to permanent accommodation.

As a follow-up to Menke's recommendation, the City requested Turner consult a second physician, Dr. James Ferrell, to gauge his recovery and evaluate future accommodations. Although Ferrell originally suggested that weight loss could improve Turner's condition, he later clarified that "[w]eight loss will not change the damage" but would "reduce the risk of further damage." Ultimately, Ferrell agreed with Menke's recommended permanent restrictions.

Reviewing the doctors' assessments, the City concluded that Turner could not perform the essential functions of his former position at the wastewater treatment plant. Concluding that Turner

lacked the necessary qualifications for any available vacancy, the City fired him in March 2011.

Following an unsuccessful appeal, Turner sued the City for ADA violations, adding FMLA-

retaliation, and workers' compensation retaliation charges under the Kentucky Civil Rights Act, KRS

§ 342.197. Moving for summary judgment, the City argued that (1) Turner could not perform the

essential functions of his job with or without a reasonable accommodation, (2) he was unqualified

for the available vacancies, and (3) the City made good-faith efforts to identify a reasonable

accommodation for Turner's permanent lifting restrictions. Refuting Turner's retaliation claims, the

City pointed to the lack of evidence linking Turner's discharge with his medical leave or workers'

compensation claim. Turner timely appeals the district court's ADA decision, but abandons his

retaliation claims on appeal. *See United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006)

("An appellant abandons all issues not raised and argued in its initial brief on appeal.") (internal

quotation marks omitted).

II.

A. Standard of Review

We review de novo the district court's summary judgment grant, *Kalich v. AT&T Mobility,*

*L.L.C.*, 679 F.3d 464, 469 (6th Cir. 2012), affirming if, viewing the record in the light most favorable

to the nonmoving party, there remain no genuine disputes of material fact and the moving party is

entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).

B. Turner's ADA Claim

The ADA bars employers from discriminating against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The KCRA deploys a substantially similar standard and does not need a separate analysis. *See Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). The plaintiff shoulders the initial burden of showing that he is disabled and "otherwise qualified" for the position, either without accommodation from the employer, with an alleged essential job requirement eliminated, or with a proposed reasonable accommodation. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to show that the "challenged job criterion is essential" or that the "proposed accommodation will impose an undue hardship upon the employer." *Id.* (internal quotation marks omitted). The City concedes that Turner fits the ADA's "disability" definition, but nevertheless argues that it could not reasonably accommodate him because he was not qualified for any vacant position. In response, Turner argues that, had the City taken up his request for a ramp, which Turner considers a reasonable accommodation, he would have been qualified for a permanent position at the recycling center. Finally, Turner questions the City's engagement in the ADA's interactive process. Because we agree with the district court's finding that the recycling center had no vacancies, we need not decide whether Turner possessed the necessary qualifications for a position there.

1.  The City's Vacant Positions

While the ADA mandates "reasonable accommodations," such as a transfer, for an employee's disability, an employer need not displace another employee, waive essential job requirements, or create a new position to make room for a disabled worker. *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000). Indeed, the statute specifically uses the words "reassignment to a *vacant* position." 42 U.S.C. § 12111(9)(B) (emphasis added). As the district court correctly noted, the City lacked such a vacancy. Turner's comeback—that two recycling-center employees retired around the time of his injury and reassignment, and the City should have enlisted him for these vacant positions—misses the mark. For one, Turner points to vague, secondhand testimony to support the existence of these openings. In fact, the only retiree he could identify was John Sievers, and even then Turner could not pinpoint when Sievers retired. City records clarified this point, confirming that Sievers took medical leave in November 2010, but did not retire until a month after Turner's March 2011 discharge. To prove the second alleged vacancy, Turner turned to Wheeler's testimony, which identified "Albert" Taylor (whose name actually is Alvin Taylor) as the second retiring employee. But Wheeler could only guess that Taylor retired around 2009 or 2010. Wheeler's testimony regarding the timing of Taylor's departure, however, conflicts with the record, which shows that Taylor retired in December 2005.

Turner now admits that Sievers "did not formally retire until April of 2010." (Appellant Br. at 21.) Nevertheless, he presses that the City knew Sievers' position would "become vacant in a

short period of time." (*Id.* (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996)).) Defining "a short period of time" naturally follows. In *Monette v. Electronic Data Systems Corp.*, this court suggested that a one-week period suffices, but emphasized that employers are not required to keep a disabled employee "in the hope that some position may become available some time in the future." 90 F.3d at 1187. Turner offers no evidence, no concrete time line, suggesting the City knew Sievers' position would become available within a "short period of time," such as a week. Taking some liberties with the record, Turner cites Wheeler's deposition for the proposition that "it was well known Sievers was not returning to work." But nothing in Wheeler's deposition supports this conclusion; all that this testimony suggests is that Sievers worked at the center and retired due to health reasons. On the key issue, Wheeler remained agnostic. Thus, the record yields no questions of fact on the subject of available vacancies, and the City bears no liability as a matter of law.

2. Engagement in Interactive Process

Turner faults the City for allegedly failing to "adequately engage in the interactive process,: arguing that the City "fail[ed] to make a reasonable inquiry into Turner's ability to continue his employment at the recycle center," and failed to reasonably consider his loading-ramp accommodation. Turner's apparent dissatisfaction with the City's procedures discounts the fact that it hired Ferrell for the sole purpose of evaluating Turner's restrictions. Moreover, the City sent Ferrell a follow-up letter to determine if weight loss could improve Turner's condition. This inquiry

came on the heels of a lengthy interactive process; Turner first took several weeks off work to recover, returned to light duty work for six months during rehabilitation, and continued light work for several months after Menke made the restrictions permanent. Though Turner maintains that the City should have commissioned Ferrell to evaluate his physical fitness for the recycling post, this claim, too, fails because it incorrectly assumes the center had a permanent vacancy. Because Turner fails to point to any evidence to suggest that the City's bad faith caused a breakdown of the ADA's interactive process, *Kleiber*, 485 F.3d at 871-72, we reject Turner's final challenge.

III.

We AFFIRM the district court's grant of summary judgment.